(No. 106361.—

*In re* SAMANTHA V., a Minor (The People of the State of Illinois, Appellee, v. Samantha V., Appellant).

*Opinion filed September 24, 2009.*

Patricia Unsinn, Deputy Defender, and Joshua A. Tepfer, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, and Sanjay Nangia, law student, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg and Whitney Lee Ricketts Bond, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Respondent, Samantha V., was found delinquent in the circuit court of Cook County for two offenses, aggravated battery that caused great bodily harm (720 ILCS 5/12—4(a) (West 2004)) and aggravated battery on a public way (720 ILCS 5/12—4(b)(8) (West 2004)). After a dispositional hearing, she was sentenced to 5 years' probation and 40 hours of community service. In addition, respondent was ordered to refrain from loitering in Bosley Park after 6 p.m., abide by a 9 p.m. curfew, and submit a DNA sample. The appellate court affirmed the adjudication and dispositional findings, but remanded the matter for clarification of the loitering condition of

her probation. No. 1—06—0580 (unpublished order under Supreme Court Rule 23). We granted respondent's petition for leave to appeal (210 Ill. 2d R. 315(a)), and now consider whether the one-act, one-crime rule applies in juvenile cases and, if so, whether respondent was found delinquent for two offenses arising from the same physical act, in violation of that rule. For the reasons that follow, we reverse in part, and remand with directions.

## BACKGROUND

The 14-year-old respondent was found delinquent on a theory of accountability for two counts of aggravated battery stemming from the group beating of Rosalinda Rodriguez, a 20-year-old woman. The State's evidence demonstrated that a group of girls, ranging in age from 12 to 15 years old, were walking down Farrell Street in the City of Chicago at approximately 11 p.m. on June 10, 2005. Rosalinda was at her home, located on Farrell Street, with her two younger sisters and a neighbor when she heard a "commotion" and looked out of her window. Rosalinda saw respondent and seven other girls standing by the gate to her property. According to Rosalinda, some of the girls were on her property and some were outside the gate. Rosalinda explained that she knew all the girls, either personally or from seeing them around the neighborhood, and walked outside because she did not want the girls to enter her property or allow her dog to escape the fenced-in yard. One of the girls in the group, Jessica M., mumbled something to Rosalinda, and when Rosalinda said "What?" Jessica M. punched her in the face. Rosalinda explained that she and Jessica M. began punching each other and were eventually fighting in the street. The other girls who were with Jessica, including respondent, surrounded Rosalinda and began cheering as Jessica M. got on top of her, scratched her eyes, pulled

her hair, hit her head against the cement, and hit her with a bottle.

Rosalinda testified that the other girls in the group kicked her while she was lying on the ground, pinned down by Jessica M. Rosalinda specifically identified respondent as one of the girls who kicked her. She admitted that she did not see respondent's foot come in contact with her body, but stated that she felt kicks coming from the area where respondent was standing. The beating ended when a neighbor, along with Rosalinda's brother, pulled Jessica M. away from Rosalinda. Rosalinda testified that she went to the hospital and received nine stitches on her right eyebrow. She also suffered numerous scrapes, cuts, and bruises.

Priscilla Rodriguez, Rosalinda's 12-year-old sister, witnessed part of the attack. Priscilla stated that she knew respondent before the attack and saw respondent kick Rosalinda while Rosalinda was on the ground being beaten by Jessica M.

The defense presented the testimony of Emmanuel Fabela who lives near Rosalinda on Farrell Street. Fabela stated he witnessed the fight between Jessica M. and Rosalinda while standing on his porch smoking a cigarette. Fabela stated that he knew all of the girls involved in the fight from seeing them in the neighborhood, but did not know them personally. Fabela saw the group walking on Farrell Street and noticed them because they were being unusually loud. He saw Rosalinda come out of her house, jump over the fence, and walk to the girls until she was standing face-to-face with Jessica M. Fabela stated that Rosalinda pushed Jessica M., and then they started fighting. Fabela averred that the fight was strictly between Rosalinda and Jessica M. Although the other girls were standing around, he did not see any of them kick Rosalinda.

Ashley M., who was also charged in this case, admitted that she was part of the group that was involved in the altercation, but stated that respondent was not present when the fight started. Jessica M. likewise testified that respondent was not at the scene. Oscar Moya testified that he was with respondent on June 10, 2005, between 10:30 and 11 p.m. Oscar stated that he accompanied respondent to her home so she could "check in." While in respondent's backyard, Oscar heard screaming which was coming from down the block. He and respondent ran toward the area of the fight and arrived as a man was pulling Rosalinda and Jessica M. apart.

The trial court entered findings of delinquency for both counts charged: aggravated battery that caused great bodily harm and aggravated battery on a public way. The trial court entered a "Trial Order" which indicated that respondent was "found guilty as to *** all counts 1 + 2." The court then ordered the probation department to conduct a social investigation and continued the matter for a dispositional hearing. A social investigation report was presented to the court and made part of the record. The report indicated that respondent was found delinquent for two counts of aggravated battery.

After the dispositional hearing, the trial court entered a "Sentencing Order" making respondent a ward of the court and placing her on probation for five years. A "Probation Order" was also entered which indicated that respondent was ordered to complete five years of probation with the following conditions: attend school daily and comply with school rules, complete 40 hours of community service, write an essay about what she learned from community service, attend a victim impact panel, refrain from gang activity, refrain from loitering in Bosley Park after 6 p.m., abide by a 9 p.m. curfew, and submit to a DNA sample.

Respondent appealed, contesting the sufficiency of the evidence against her, the constitutionality of the trial court's orders which barred her from Bosley Park and compelled her to provide a DNA profile, and the propriety of the court's adjudication for two counts of aggravated battery in light of the one-act, one-crime rule. The appellate court affirmed, but remanded the matter for revision and clarification of the condition of her probation which prohibited her from "loitering" in Bosley Park. We granted leave to appeal.

## ANALYSIS

Before addressing the parties' claims, we review the three phases of juvenile delinquency proceedings provided for in the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—101 *et seq.* (West 2004)); the findings phase, the adjudicatory phase, and the dispositional phase. *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 451 (2007). The findings phase consists of a trial and determination of guilt. 705 ILCS 405/5—601 through 5—625 (West 2004); *Stralka*, 226 Ill. 2d at 451. During this phase, the trial court applies the reasonable doubt standard of proof and the rules of evidence that would be followed in a criminal case to determine whether the minor should be found delinquent. 705 ILCS 405/5—605(3)(a) (West 2004); *Stralka*, 226 Ill. 2d at 452. If a delinquency finding is entered, the matter proceeds to sentencing. 705 ILCS 405/5—620 (West 2004); *Stralka*, 226 Ill. 2d at 452. The sentencing proceeding includes the adjudication phase, where the court determines whether it is in the best interests of the minor and the public to make the minor a ward of the court. 705 ILCS 405/5—705(1) (West 2004); *Stralka*, 226 Ill. 2d at 453. If the minor is made a ward of the court, the matter proceeds to the dispositional phase where the court fashions an appropriate sentence that

will best serve the minor and the public. 705 ILCS 405/ 5—705(1) (West 2004); *Stralka*, 226 Ill. 2d at 453.

In this case, the trial court conducted each of the three phases, and entered orders corresponding to its findings. At the end of the first phase, the trial court found respondent delinquent and entered its findings of guilt in the form of a "Trial Order," which indicated that respondent was found guilty of both counts charged. At the end of the second stage, the trial court issued a "Sentencing Order," which did not make reference to the offenses for which respondent was found delinquent, but did make respondent a ward of the court and imposed a five-year sentence of probation. After the third stage, the trial court issued a "Probation Order," detailing the specific conditions of respondent's probation. This order also did not reference the offenses for which respondent was found delinquent. The parties refer to the "Sentencing Order" as the "Adjudication" and the "Probation Order" as the "Dispositional Order." For purposes of consistency, we refer to these orders in the same terms. Within that framework, we turn to the parties' claims.

Respondent asserts that the trial court erred in finding respondent delinquent for two counts of aggravated battery when both counts arose from the same act. Respondent argues that she would be entitled to have one of the delinquency findings vacated under the one-act, one-crime rule if this were an adult criminal matter, and further asserts that the one-act, one-crime rule should be applied in juvenile proceedings because juveniles, like adults, are exposed to significant prejudice from multiple convictions in their backgrounds. Accordingly, respondent asks this court to merge or vacate one of the aggravated battery findings and order that the record be corrected to reflect that respondent was found delinquent for only one offense.

The State maintains that respondent is not entitled to the relief she requests. First, the State asserts respondent forfeited review of her one-act, one-crime claim because she failed to raise the issue at trial. Alternatively, the State maintains that the one-act, one-crime rule should not apply to juvenile proceedings because the protections it affords adult criminal defendants already exist in the Act, as juveniles are only subject to one finding of delinquency and one sentence. Finally, the State asserts that if this court chooses to apply the one-act, one-crime rule to juvenile cases, its application would be improper in this case because the rule does not prohibit the State from charging and proving multiple offenses—it prohibits the trial court from sentencing an offender for more than one offense arising from a single act. The State argues that, in this case, it proved that respondent committed the offenses charged and, therefore, the court's findings should remain in the record. Moreover, the adjudication and dispositional orders entered by the trial court do not list the offenses for which respondent was found delinquent, thus protecting respondent from prejudice.

Respondent acknowledges that she was required to object to the one-act, one-crime error at trial to preserve it for review and admits that she failed to raise such an objection. However, respondent asserts that the forfeiture rule should be relaxed in this case. First, respondent maintains that, in the context of a civil proceeding, she would not be required to raise an objection to preserve an error when it is apparent that the objection would have been futile. Respondent asserts that any one-act, one-crime objection she would have raised in the trial court would have been futile in light of appellate court precedents holding that the one-act, one crime rule does not apply in juvenile cases. See *In re Ricardo A.*, 356 Ill. App. 3d 980, 997 (2005); *In re N.S.*, 326 Ill. App. 3d 1094,

1095-96 (2002); *In re S.D.S.*, 103 Ill. App. 3d 1008, 1015 (1982); *In re Mareno*, 43 Ill. App. 3d 556, 558 (1976).

We reject respondent's invitation to overlook forfeiture on this basis because the rules of civil procedure do not direct our consideration of this issue. In *In re M.W.*, 232 Ill. 2d 408, 430 (2009), we explained that the forfeiture principles that apply in criminal proceedings apply in proceedings under the Act. A criminal defendant preserves an error for review by objecting to the claimed error at trial and raising the issue in a posttrial motion. *M.W.*, 232 Ill. 2d at 430. Similarly, a minor must object at trial to preserve a claimed error for review. However, minors are not required to file a postadjudication motion. *In re W.C.*, 167 Ill. 2d 307, 327 (1995). As we stated in *M.W.*, respondent's failure to object at trial forfeits consideration of the claimed error on appeal, unless respondent can demonstrate plain error. *M.W.*, 232 Ill. 2d at 430.

Respondent maintains that the plain-error exception to the forfeiture rule would apply in this case because the evidence was closely balanced and the error affects the integrity of the judicial process. The plain-error doctrine allows a reviewing court to consider unpreserved error when either: (1) an error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) an error occurs that is so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Under both prongs of the plain-error test, the burden of persuasion remains with respondent. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). Before considering whether the plain-error exception applies, we must first determine whether any error occurred. *Herron*, 215 Ill. 2d at 187;

*People v. Johnson*, 218 Ill. 2d 125, 139 (2005). This requires us to conduct a substantive review of the issues raised. *Walker*, 232 Ill. 2d at 124-25 (2009). Accordingly, we first consider whether the one-act, one-crime rule applies in juvenile proceedings. This issue presents a question of law which we review *de novo. People v. Palmer*, 218 Ill. 2d 148, 154 (2006).

Respondent points out that this court recently declared that the one-act, one-crime rule does apply in juvenile proceedings in *People v. Artis*, 232 Ill. 2d 156 (2009), and asserts that there is no reason to reconsider that position. The State counters that this court's discussion of the application of the one-act, one-crime rule in juvenile proceedings in *Artis* amounted to an "overgeneralization" of our jurisprudence and should not be followed in this case. The State urges us to refrain from applying the one-act, one-crime rule in juvenile proceedings, asserting that the protections afforded to criminal defendants through this rule are already inherent in the Act, which allows for only one finding of delinquency and one sentence.

While this case was in the briefing stage, we filed our opinion in *Artis*, where we considered and rejected the State's invitation to abandon the one-act, one-crime rule in the criminal court setting. In *Artis*, we reviewed the history and evolution of the one-act, one-crime rule in our jurisprudence. We explained that the rule was established in *People v. King*, 66 Ill. 2d 551 (1977), where this court recognized that "[p]rejudice results to the defendant *** in those instances where more than one offense is carved from the same physical act." *King*, 66 Ill. 2d at 566. The "prejudice" referred to by the *King* court was identified as prejudice that could adversely affect a defendant's parole opportunities. *King*, 66 Ill. 2d at 564.

We also noted in *Artis* that "[i]n the two decades since *King* was decided, this court has had occasion to address the impact of a one-act, one-crime violation on a defendant, quite apart from any effect on parole." *Artis*, 232 Ill. 2d at 165. We cited to *People v. Davis*, 156 Ill. 2d 149, 160 (1993), a case that dealt with an improper conviction for greater and lesser-included offenses. There, we exercised our supervisory authority to vacate the defendant's conviction for a lesser-included offense, despite the fact that the issue had been forfeited, "out of an awareness that the effects of the improper conviction are not confined to this trial and sentence." In *Davis*, we stated:

"Defendant may be subject to future prejudice as a result of the improper convictions. In the unfortunate event of a future encounter with the criminal justice system, the improper conviction could likely affect decisions with respect to the setting of bond and sentencing, as well as parole opportunities. This is so regardless of whether an improper sentence has also been imposed. Significantly, the improper conviction appears on defendant's presentence investigation report as well as on the court's record sheet." *Davis*, 156 Ill. 2d at 160.

In *Artis*, we also recognized that the protections afforded to defendants by the one-act, one-crime rule are integral to maintaining the integrity of the judicial process. *Artis*, 232 Ill. 2d at 168. We noted that this court has held that a violation of the one-act, one-crime rule rises to the level of plain error because the error affects the substantial rights of the accused. *Artis*, 232 Ill. 2d at 167-68, citing *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). We further recognized that the protections afforded to criminal defendants by the one-act, one-crime rule have been extended to juvenile proceedings. Citing *In re W.C.*, 167 Ill. 2d 307 (1995), we stated, "[t]his court has also applied the *King* doctrine in a juvenile case." *Artis*, 232 Ill. 2d at 168.

In *W.C.*, the minor was found delinquent and committed to the Department of Corrections for two counts of first degree murder based on accountability even though only one person was murdered. The circuit court found that both counts were proven beyond a reasonable doubt and merged the counts into one finding of delinquency. However, the dispositional order indicated that the minor's commitment to the Department of Corrections was based on two offenses of first degree murder. *W.C.*, 167 Ill. 2d at 316-18. On appeal to this court, the minor asserted that it was fundamentally unjust to allow the record to reflect that he was found guilty of two murders. The minor argued that the multiple findings could adversely affect him in future criminal or juvenile proceedings because a juvenile record can be used in aggravation in criminal court, even if a delinquency finding was never entered on a particular charge. *W.C.*, 167 Ill. 2d at 341.

The State countered that the minor had forfeited the claim of error. Additionally, the State argued that it was proper to base a finding of juvenile delinquency on multiple offenses arising from the same conduct and that any future prejudice could be avoided by the parties and the court reviewing the record. *W.C.*, 167 Ill. 2d at 341-42. We bypassed the forfeiture rule and, in an exercise of our supervisory authority, modified the minor's dispositional order to reflect that the minor's commitment to the Department of Corrections was based on a single offense of first degree murder. *W.C.*, 167 Ill. 2d at 343. Although we agreed with the State that any future prejudice could be alleviated by resort to the record, we nevertheless concluded that modification of the dispositional order would serve "the interests of justice and judicial economy." *W.C.*, 167 Ill. 2d at 342-43. We added, "[s]uch modification is in order to avoid the possibility of

future confusion or adverse effect to respondent." *W.C.*, 167 Ill. 2d at 343.

The State contends that our application of the one-act, one-crime rule in *W.C.* should be limited to the facts of that case. The State avers that our opinion in *W.C.* was intended to correct a dispositional order that showed that the minor was committed to the Department of Corrections for two murders when the murder counts were merged and only one finding of delinquency was entered. The State adds that this court did not intend for *W.C.* to require the application of the one-act, one-crime rule to all juvenile proceedings. The State points out that *W.C.* does not even cite to *King* or mention the one-act, one-crime rule.

Further, the State maintains that the one-act, one-crime rule has no place in juvenile proceedings because juveniles are not subject to the prejudice the one-act, one-crime rule is intended to protect. The State asserts that the one-act, one-crime rule, as articulated in *King*, was intended to protect defendants from multiple convictions that could result in lengthier sentences or create adverse effects on parole opportunities. However, in juvenile proceedings, only one finding of delinquency is entered even if a minor was found guilty of several charges, and the minor receives only one sentence. Moreover, the State asserts that the prejudice to a minor is diminished because a juvenile adjudication is not a conviction, and juvenile records are not available to the general public, but are available only to law enforcement and court personnel. Finally, the State asserts that application of the one-act, one-crime rule hinders the State's right to charge and prove alternative theories of a minor's guilt.

We reject the State's claims. Our statement in *Artis* that the one-act, one-crime rule has been applied in juvenile proceedings was not an "overgeneralization" of

our holding in *W.C.* Although this court did not explicitly state it was applying *King* or the one-act, one-crime rule in *W.C.*, the court plainly stated that it was modifying the minor's dispositional order to serve "the interests of justice" and protect the minor from the "possibility of future confusion or adverse effect" that could result from two findings of delinquency stemming from one act of first degree murder. This court's rationale for modifying the minor's dispositional order was rooted in the one-act, one-crime rule, and although we did not explicitly state that we were applying the rule, our decision demonstrated adherence to the rule.

We are not persuaded by the State's arguments encouraging us to move away from this precedent. It may be true that, generally, only one finding of delinquency is entered against a minor, and a minor receives only one sentence. However, it cannot reasonably be argued that the crimes underlying the delinquency finding will have no impact once the juvenile is sentenced and the dispositional order is entered. In the event of a future encounter with the juvenile or criminal justice systems, it is hard to imagine that the State would merely inform a court preparing to set bond, fashion a sentence, or entertain matters related to juvenile detention or parole of the mere fact of a juvenile delinquency finding without seeking to inform the court of the crimes committed, particularly if those crimes were crimes of violence. See *Davis*, 156 Ill. 2d at 160 (stating that an improper conviction is likely to affect bond, sentencing and parole decisions in future proceedings); see also 705 ILCS 405/5—150(1)(a) through (1)(d) (West 2004) (stating that evidence and adjudications are admissible in subsequent juvenile and criminal proceedings for purposes of determining bail or sentencing, and are also admissible in criminal or civil proceedings where the minor is a witness); 705 ILCS 405/5—501(2)(b) (West

2004) (stating that minor's record of delinquency should be considered in pretrial detention or shelter care hearings); 730 ILCS 5/5—5—3.2 (West 2004) (stating that, when sentencing a criminal defendant, her prior history of delinquency should weigh in favor of imposing a prison term or more severe sentence).

Even if the State does not seek to advise the court of that information, it is likely that the court will question the basis of any delinquency findings on an individual's record, as the type of crimes previously committed are integral to the court's calculus in setting bond or crafting an appropriate sentence. This information also bears on determinations related to juvenile parole. Moreover, any improper convictions attributed to a minor are likely to remain on criminal background reports that may be relied upon in future proceedings where the minor is a party or a witness. See 705 ILCS 405/5—150(1)(c), (1)(d) (West 2004).

We recognize, as the State points out, that juvenile records are not available to the public and, therefore, juveniles are less likely to bear the stigma and social consequences that accompany a criminal conviction. While that point is accurate, it does not bear on the issue before us. The one-act, one-crime rule is not intended to protect those found guilty of a criminal offense from prejudice resulting from circumstances outside the justice system; it is intended to protect them from prejudice they will encounter within the justice system. *Artis*, 232 Ill. 2d at 167-68; *Harvey*, 211 Ill. 2d at 384; *Davis*, 156 Ill. 2d at 160; *King*, 66 Ill. 2d at 564-65. Juveniles are faced with the same potential for prejudice as adults in the context of future criminal proceedings and thus deserve the same protections. See *W.C.*, 167 Ill. 2d at 320-21 (noting that minors are afforded the same due process and procedural safeguards as adults such as the right to counsel, right to confront witnesses, right to

remain silent, right to adequate notice, right to file pretrial motions and right to appeal; additionally, the standard of proof and rules of evidence followed in criminal proceedings are likewise followed in juvenile adjudicatory hearings).

We also reject the State's assertion that application of the one-act, one-crime rule to juvenile cases somehow precludes the State from charging and proving a minor guilty under multiple theories. The State possesses broad discretion in determining whether an individual should be charged with a criminal offense and the nature of the offenses to be charged. 705 ILCS 405/5—330 (West 2004); see also *People v. Perry*, 224 Ill. 2d 312, 339-40 (2007) (discussing the broad discretion of the prosecutor in making charging decisions). While the application of the one-act, one-crime rule in any context may cause the State to be more careful in its charging decisions, it in no way precludes the State from bringing whatever charges it deems necessary. We cannot discern how application of the one-act, one-crime rule in juvenile proceedings puts the State in any worse position than it would otherwise be in because, as the State readily points out, the final outcome of the proceeding is the same: one finding of delinquency and one sentence.

Accordingly, we hold that the one-act, one-crime rule applies to juvenile proceedings. To the extent that decisions of the appellate court hold otherwise, they are overruled. *In re Jessica M.*, 385 Ill. App. 3d 894, 906 (2008); *Ricardo A.*, 356 Ill. App. 3d at 997; *N.S.*, 326 Ill. App. 3d at 1095-96; *S.D.S.*, 103 Ill. App. 3d at 1015; *Mareno*, 43 Ill. App. 3d at 558 (holding that the one-act, one-crime rule does not apply in juvenile proceedings).

Having concluded that the one-act, one-crime rule should apply to juvenile cases, we now consider whether it should be applied in this case. Respondent asserts that the finding of guilt entered against her for the offense of

aggravated battery that caused great bodily harm is based on the same physical act as her conviction for aggravated battery on a public way, and argues that the State cannot attempt to apportion the conduct into separate acts for the first time on appeal. The State counters that respondent was charged and found guilty of two counts of aggravated battery based on separate physical acts which resulted in distinct physical injuries.

Our decision in *People v. Crespo*, 203 Ill. 2d 335 (2001), guides our analysis. In *Crespo*, the defendant, who stabbed the victim three times, was charged with one count of armed violence, one count of aggravated battery causing great bodily harm, and one count of aggravated battery using a deadly weapon. The charges filed against the defendant did not apportion each stabbing. The trial court found the defendant guilty, merged the aggravated battery offenses, and sentenced the defendant to concurrent prison terms of 30 years for armed violence and 5 years for aggravated battery. *Crespo*, 203 Ill. 2d at 337. On appeal, the defendant asserted that his conviction for aggravated battery should be vacated under the one-act, one-crime rule because the same physical act which formed the basis for the aggravated battery also formed the basis for the armed violence charge. The State countered that the defendant stabbed the victim multiple times and that each act of stabbing constituted a separate offense. *Crespo*, 203 Ill. 2d at 340. We reviewed the charging document and noted that the counts alleged did not differentiate between separate stab wounds. "Rather, these counts charge defendant with the same conduct under different theories of criminal culpability." *Crespo*, 203 Ill. 2d at 342.

A review of the charging document in this case brings us to the same conclusion. On September 1, 2005, the State filed an amended petition for adjudication of wardship against respondent alleging that she committed two

counts of aggravated battery against the victim. The first count alleged that, "[o]n or about June 10, 2005, *** [respondent] committed the offense of AGGRAVATED BATTERY," when she "knowingly caused great bodily harm to [the victim], in that the above named minor struck [the victim] about her head multiple times, causing a laceration which required stitches." Count II alleged that, "on or about June 10, 2005, *** [respondent] committed the offense of AGGRAVATED BATTERY,*** while [the victim] was on the street or sidewalk of *** a public way," when she "knowingly caused bodily harm to [the victim] in that the above named minor struck [the victim] about the face and/or body multiple times causing lacerations to her face and/or body."

Like *Crespo*, the State in this case did not differentiate between strikes or blows to the victim when drafting the charging instrument. Rather, the State drafted the adjudication petition to include two counts charging respondent with the same conduct under two different theories of criminal culpability. This interpretation of the language of the charging document is supported by the State's conduct at trial. The record demonstrates that the State failed to elicit any testimony which discussed specific strikes or blows that were administered to the victim by respondent. Moreover, in closing argument, the State repeatedly referred to both counts collectively as "this incident." The trial court also seemed to view the counts charged as being based on a single attack. When stating its findings, the trial court discussed the evidence demonstrating that the victim suffered serious bodily harm, and then stated, "[a]s to Count 2, there is no question that the beating took place on a public way thus satisfying that prong of Count 2." The appellate court likewise found that the two counts of aggravated battery for which respondent was charged "were based on the

same and single physical act of battering Rosalinda." No. 1—06—0580.

We find that the trial court violated the one-act, one-crime rule when it found respondent guilty of both counts and failed to merge the counts or otherwise indicate on the record that respondent's adjudication of delinquency was based on only one count of aggravated battery. We note, as we did in *Crespo*, that each strike or blow to the victim could support a separate finding of guilt for aggravated battery. *Crespo*, 203 Ill. 2d at 345. However, as it is in the criminal court, findings of guilt for multiple offenses in juvenile court can only be sustained if the charging document reflects the State's intent to apportion the accused's conduct and prosecute the accused for multiple crimes. *Crespo*, 203 Ill. 2d at 345. A holding to the contrary would be "profoundly unfair" and could infringe upon an accused's constitutional right to be informed of the nature and cause of the charges against her so she may prepare a defense. *Crespo*, 203 Ill. 2d at 345.

Having concluded that the one-act, one-crime rule applies to juvenile proceedings, and was violated in this case, we find that an error occurred at respondent's trial. We must now determine whether the plain-error exception to the forfeiture rule applies in this case. As previously stated, the plain-error rule instructs us to consider whether "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *Herron*, 215 Ill. 2d at 186-87. A plain error has occurred if either of the two prongs are satisfied. *Harvey*, 211 Ill. 2d at 389. We conclude that respondent has satisfied her burden to show that plain error occurred in this case, as it is well established that a one-act, one-crime violation affects the integrity of the judicial process, thus satisfying the

second prong of the plain-error test. *Harvey*, 211 Ill. 2d at 389; *Artis*, 232 Ill. 2d at 167-68.

Respondent asks us to remand this matter to the trial court, order the trial court to vacate one of the findings of guilt entered against respondent for the offense of aggravated battery, and correct the record to reflect that the minor was found delinquent on only one count of aggravated battery. Respondent does not take a position on which count should be vacated. Respondent also urges us to order the trial court to correct "all references" to multiple findings of delinquency in the record.

We agree that under the one-act, one-crime rule, one of the findings of delinquency entered against respondent should be vacated. Specifically, respondent should be sentenced on the most serious offense and the less serious offense should be vacated. *Artis*, 232 Ill. 2d at 170. In determining which offense is the most serious, we are instructed to consider the plain language of the statutes, as common sense dictates that the legislature would prescribe greater punishment for the offense it deems the more serious. *Artis*, 232 Ill. 2d at 170; *People v. Lee*, 213 Ill. 2d 218, 228 (2004). If the punishments are identical, we are instructed to consider which offense has the more culpable mental state. *Artis*, 232 Ill. 2d at 170-71. Aggravated battery that causes great bodily harm and aggravated battery on a public way are both Class 3 felonies and both require that the accused acted intentionally and knowingly when committing the offense. 720 ILCS 5/12—4(a), (b)(8) (West 2004); *People v. Robinson*, 379 Ill. App. 3d 679, 684-85 (2008) (stating that, with respect to a battery offense, the criminality of a defendant's conduct depends on whether she acted knowingly or intentionally). Under these circumstances, we cannot determine which is the more serious offense. Accordingly, we remand the matter to the trial court for

that determination. *Artis*, 232 Ill. 2d at 177 ("[w]e conclude that the better course is to continue to adhere to the principle that when it cannot be determined which of two or more convictions based on a single physical act is the more serious offense, the cause will be remanded to the trial court for that determination").

On remand, we direct the trial court to correct the "Trial Order" which indicates that respondent has been found guilty as to "all counts 1 + 2." We note that the "Sentencing Order" making respondent a ward of the court, and the "Probation Order," detailing the terms of her sentence, do not list the offenses for which she was found guilty and, therefore, do not require modification. We also remand for the trial court to revise and clarify its order barring respondent from Bosley Park after 6 p.m., as previously ordered by the appellate court.

Additionally, we decline respondent's invitation to order the trial court to correct all references in the record that indicate that respondent was found guilty of more than one offense. The trial court in this case made an error when it found respondent guilty of two offenses in violation of the one-act, one-crime rule. However, we know of no case, and respondent cites none, which suggests that it is an accepted practice of this court to alter a trial record to free it from traces of error. In the unfortunate event this delinquency adjudication is raised in a future criminal or juvenile proceeding, we trust that, after remand, court personnel will be able to discern that respondent was found guilty of only one of the counts charged and sentenced accordingly.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court in part, and remand the matter to the circuit court with directions to vacate one finding of delinquency, correct the "Trial Order," and revise and

clarify the "Probation Order" regarding loitering in Bosley Park.

*Reversed in part and
remanded with directions.*