Docket No. 105437.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TERRANCE WALKER, Appellant.

*Opinion filed January 23, 2009.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Following a bench trial, defendant, Terrance Walker, was convicted in the circuit court of Cook County of one count of first degree murder and one count of second degree murder. He was sentenced to respective concurrent prison terms of 60 years and 15 years. The appellate court affirmed. No. 1–06–1761 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal (210 Ill. 2d R. 315). For the reasons that follow, we reverse the judgment of the appellate court and remand this cause to the circuit court for a new trial.

## BACKGROUND

Because of our ultimate resolution of this appeal, we need not set forth a detailed recitation of the factual background in this case. Accordingly, we discuss only those facts necessary for an understanding of our analysis and disposition.

In June 1992, defendant, who was then 15 years old, was charged with the first degree murders of Terry Matthews and Damian Stafford. On July 9, 1992, Cook County Assistant Public Defender Marijane Placek entered an appearance on behalf of defendant. However, on August 12, 1993, Assistant Public Defender Shelton Green filed a motion for continuance, stating that Placek was on a leave of absence until September 13, 1993, and requesting that the proceedings be continued until sometime after her return. On November 19, 1993, a motion to suppress statements was filed by Assistant Public Defender Viola Armijo Rouse, who appears to have been assigned defendant's case after Placek. This motion alleged that a seven-page, handwritten inculpatory statement made by defendant on June 15, 1992, at the Chicago police department's Area 5 headquarters was the result of police improperly questioning defendant without the presence of a parent or youth officer, and that it was neither knowingly nor voluntarily made.

During a status hearing on December 16, 1993, Rouse indicated that defendant would be waiving his right to a jury trial, and the parties stated that they were ready to set a trial date. The court inquired whether defense counsel was withdrawing her pending motion to suppress defendant's inculpatory statement. Rouse responded that she was exploring whether there could be a "possible disposition of the case," and asked that the motion be "entered and continued." The court stated "I can hear that [motion] along with the trial" and, by agreement, set January 20, 1994, as the trial date.

On January 20, defendant's case was called for trial, and the State answered that it was ready to proceed. The following colloquy then occurred between defense counsel and the court:

"[Defense Counsel]: Judge, I had [defendant's] case up on January 26th, and [defendant] left a message yesterday that his case was up today. I have been on trial both Tuesday and Wednesday before Judge Karnezis, on Tuesday until about

-2-

6:00 and yesterday until 7:10. I am not ready to go to trial today, and I did not call the State. He asked me why I didn't call. But, as I said, I have it up for next week.

THE COURT: Ms. Rouse, this has been set. I am sorry. We will pass this case for trial.

[Defense Counsel]: I am not ready for trial, Judge, and I will not be able to go to trial today.

THE COURT: It is irrelevant. There isn't a private attorney in the business who hasn't tried to pull something like this.

[Defense Counsel]: As the court knows, I was not originally assigned to [defendant's] case.

THE COURT: I know, but it is a dirty shame."

The foregoing is the entire discussion between the court and defense counsel regarding her request for continuance due to her admitted unpreparedness. Although the court temporarily passed defendant's case, the record does not indicate how much time elapsed until the proceedings resumed. When they did, defense counsel tendered to the court an executed jury waiver signed by defendant. The court questioned him about the waiver and found that it was knowingly and intelligently made.

Defendant's bench trial then commenced. In his opening argument, the prosecutor emphasized that defendant made an inculpatory statement in which he confessed to committing the crimes, and that the evidence found at the scene corroborated this confession. Defense counsel waived opening statement.

The State then presented its case in chief. Chicago police officer Gregory Bella testified that he and his partner responded to a call from dispatch reporting a possible double homicide, and discovered two men seated in the front seats of a car, both shot in the back of the head. Bella then identified several photographs of the crime scene and the victims. Defense counsel did not cross-examine this witness.

The State's next witness, Robert Davie, was a forensic investigator with the Chicago police department's crime lab who processed the crime scene. Davie identified photographs of two fired cartridge cases he recovered from the rear floor of the vehicle, and one .22-caliber cartridge case found in the front passenger area.

Although he was unable to recall how many fingerprints he was able to lift, he did recall that one was recovered from the exterior of the car's rear door, and that it was submitted to the crime lab for further analysis. Defense counsel then cross-examined the witness, which, in its entirety, was as follows:

> "Q. Officer Davie, you took print ridge impressions from both the inside and outside of the car, is that correct?
>
> A. That's correct.
>
> Q. And from the left side and from the right side?
>
> A. Right.
>
> Q. And you took 16 ridge impressions, is that correct?
>
> A. I believe so, if that is what the report states."

The State also called James Brewer, a latent fingerprint examiner for the Chicago police department. Brewer testified that there were 16 latent fingerprint lifts from the crime scene, with one lift recovered from the right exterior rear door of the car in which the victims were discovered. Brewer submitted this print to the Automated Fingerprint Identification System, which suggested a possible match with defendant. He then compared the prints and confirmed that they were a match.

Defense counsel, who had stipulated that Brewer was an expert in the field of latent fingerprint examination, then cross-examined the witness, which, in its entirety, was as follows:

> "Q. Officer Brewer, out of the 16 lifts that were tendered to you, only one matched [defendant's] prints, is that correct?
>
> A. That's correct.
>
> Q. That was from the exterior door?
>
> A. I have to look. Yes."

The prosecution then proceeded by way of stipulation, stating that if Chicago Police Detective Michael Fleming were called, he would testify that after being informed by Brewer of the fingerprint match on June 15, 1992, he brought defendant to Area 5. Fleming also notified the State's Attorney's office, and Assistant State's Attorney Catherine Bernard arrived at the station. Defense counsel agreed to this stipulation.

As its final witness, the State called Assistant State's Attorney Bernard, who testified that on June 15, 1992, she went to Area 5 to interview defendant about the murders. After speaking with Detectives Fleming and Schak about the investigation, Bernard gave defendant *Miranda* warnings in the presence of Schak and Youth Officer Masonick, and defendant stated that he understood. Bernard knew defendant was a minor, and told him that he would be charged as an adult. After speaking with defendant for approximately one-half hour, Bernard asked him if he wanted to provide an inculpatory statement. Bernard explained to defendant the difference between a handwritten statement, an oral statement and a court-reported statement, and he chose to give a handwritten statement.

According to Bernard, she then went to a different room and wrote down a summary of what defendant had told her. When Bernard finished the draft, defendant was brought to the room, they read over her summary together, and made corrections where necessary. Bernard, defendant, Masonick and Schak all initialed each change, and signed each page of the statement. The prosecutor then showed Bernard a seven-page handwritten statement, which she identified as the one she wrote out.

Defense counsel then briefly cross-examined Bernard. She stated that when she arrived at Area 5, the detectives had already questioned defendant, and they conveyed this information to her. Bernard could not recall if they told her there was a youth officer present when they initially questioned defendant, and did not know when the youth officer arrived at Area 5, although he was present when she began her own questioning of defendant.

After Bernard was excused, the prosecution again proceeded by way of stipulation. The mothers of both victims, if called to testify, would state that their sons were alive prior to June 8, 1992, and the State would introduce photos showing them deceased. The State also stipulated that if Dr. Robert Kirschner were called, he would testify that he was employed by the Cook County medical examiner's office, he was qualified as an expert in the field of forensic pathology, he performed autopsies on both victims, and the victims' causes of death was multiple gunshot wounds to the back of their heads. Defense counsel agreed to these stipulations. The State then rested its case in chief.

Defense counsel's case consisted, in its entirety, of the following stipulation:

> "It would be stipulated between the parties that if Detective Schak and/or Detective Fleming were called to testify, they would testify that after the arrest of [defendant] they interviewed him, and that he told them that he had known Terry Matthews for a long time. He stated that Terry Matthews and a friend of his had accused him of stealing some dope, and that he was afraid of them. He stated that he knew these individuals to have a gun, and he thought that they would hurt him or his family. So stipulated?

> [Prosecutor]: So stipulated, your honor."

With that, the defense rested.

In its closing argument, the State emphasized that defendant's inculpatory statement was the key piece of evidence, stating that "the case obviously boils down to the statement in this case, since there were no eyewitnesses." Defense counsel, in her closing argument, asked that defendant be found not guilty of first degree murder on the basis that his inculpatory statement showed that he and his family had been threatened by the victims.

The circuit court immediately gave a ruling from the bench. In convicting defendant of the first degree murder of Matthews and the second degree murder of Stafford, the court explicitly stated that it was exclusively relying upon defendant's inculpatory statement, as it was "[l]ooking not beyond the four corners of this seven-page document," which was "not disputed." The court, however, delayed defendant's sentencing to February 15, 1994, in order to obtain a presentencing report. When the parties returned on that date, defense counsel informed the court that she was ready for sentencing and that she was not filing a motion for new trial. After sentencing defendant, the trial court then admonished him regarding his right to appeal.

The record reflects that, between August 1994 and March 1996, defendant made a series of unsuccessful *pro se* attempts to appeal the judgment of the circuit court. Included in the record are the circuit court's memorandum of orders as well as the pleadings filed by defendant, which included motions for trial transcripts and for common law record, a motion to vacate judgment and allow

defendant to file an appeal, and a motion to file a late notice of appeal. The circuit court denied these motions. Defendant also filed a *pro se* motion in the appellate court for leave to file a late notice of appeal and for appointment of counsel, which was similarly denied.

Ten years later, on March 10, 2006, defendant filed with this court a motion for supervisory order, pursuant to our Rule 383 (155 Ill. 2d R. 383). Walker v. Hon. Paul P. Biebel, No. 102338. Defendant, now represented by counsel, alleged that the admonishment regarding his right to appeal given by the circuit court after his convictions in 1994 was insufficient under the requirements of our Rule 605(a) as it existed at that time. Defendant further alleged that because his trial counsel never filed a motion for new trial, a motion to reconsider sentence, or a notice of appeal–even though defendant requested that counsel appeal his conviction–the circuit court's failure to comply with Rule 605(a) prejudiced defendant in his *pro se* attempts to preserve his appellate rights.

On May 10, 2006, this court entered a supervisory order directing the circuit court to reopen defendant's case, admonish him in accordance with Rule 605(a), and allow him to file a notice of appeal from the original judgment within 30 days of the date of the admonishment. On June 16, 2006, defendant's case was reopened in the circuit court, and he was admonished anew of his right to appeal the 1994 judgment of the circuit court. On that same date, defendant filed a notice of appeal with the appellate court.

Defendant raised two arguments on appeal: first, he asserted that the circuit court abused its discretion in denying his trial counsel's request for a continuance when she informed the court that she was unprepared for trial; second, defendant alleged that his trial counsel was ineffective, *inter alia*, by failing to prepare for trial, failing to ask for a ruling on the motion to suppress defendant's inculpatory statement and failing to file a posttrial motion.

The appellate court affirmed the judgment of the circuit court. In its unpublished order under Rule 23, the appellate court rejected defendant's arguments that his trial counsel was ineffective and that the circuit court abused its discretion by denying defense counsel's request for continuance and commencing trial when she indicated she was unprepared.

This court allowed defendant's petition for leave to appeal (210 Ill. 2d R. 315).

ANALYSIS

Defendant advances two main arguments before this court, mirroring those raised below. First, he contends that the circuit court abused its discretion in denying a continuance where defense counsel admitted she was unprepared to try defendant's double-murder case. In addition, defendant asserts that his trial counsel was ineffective in various respects throughout the proceedings. Based upon these alleged errors, defendant requests that we reverse the judgments of the appellate and circuit courts and grant him a new trial.

In response, the State advances the threshold argument that defendant has procedurally defaulted his claim that the circuit court abused its discretion in denying defense counsel's request for a continuance because this claim was not preserved in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); 725 ILCS 5/116–1 (West 1994). Generally, the failure to set forth the alleged errors made by the trial court and to specify grounds for a new trial in a posttrial motion constitutes a procedural default of the issue on review in the absence of plain error. *People v. Naylor*, 229 Ill. 2d 584, 592-93 (2008). Defendant concedes that this specific claim was not properly preserved by his trial counsel for purposes of appellate review, and requests that we excuse his procedural default and consider his allegations of error under the plain-error doctrine of Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

The plain-error doctrine is a limited and narrow exception to the general rule of procedural default (*Naylor*, 229 Ill. 2d at 593) and allows a reviewing court to consider unpreserved error when one of two conditions is met:

> "(1) a clear and obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial

process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Under both prongs of the plain-error doctrine, the burden of persuasion remains with defendant. *Naylor*, 229 Ill. 2d at 593. If a defendant fails to satisfy this burden, the result is that the "procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17 (1995). The initial step in conducting plain-error analysis is to determine whether error occurred at all. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008). This requires us to conduct a substantive review of the issue. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003).

It is well settled that the granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not interfere with that decision absent a clear abuse of discretion. *People v. Chapman*, 194 Ill. 2d 186, 241 (2000). However, "[w]here it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights, a resulting conviction will be reversed." *People v. Lewis*, 165 Ill. 2d 305, 327 (1995).

Whether there has been an abuse of discretion necessarily depends upon the facts and circumstances in each case (*People v. Friedman*, 79 Ill. 2d 341, 347-48 (1980); 725 ILCS 5/114–4 (West 1994)), and "[t]here is no mechanical test *** for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend." *People v. Lott*, 66 Ill. 2d 290, 297 (1977). Factors a court may consider in determining whether to grant a continuance request by a defendant in a criminal case include the movant's diligence, the defendant's right to a speedy, fair and impartial trial and the interests of justice. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000); *People v. Coleman*, 203 Ill. App. 3d 83, 100 (1990); 725 ILCS 5/114–4 (West 1994). Other relevant factors include whether counsel for defendant was unable to prepare for trial because he or she had been held to trial in another cause (725 ILCS 5/114–4(b)(2) (West 1994)), the history of the case (*Coleman*, 203 Ill. App. 3d at 100)), the complexity of the matter (*People v. Nickols*, 41 Ill. App. 3d 974, 979 (1976)), the seriousness of the charges (*People v. Hamilton*, 17 Ill. App. 3d 740, 742 (1974)), as well as docket management, judicial

economy and inconvenience to the parties and witnesses (*People v. Sullivan*, 52 Ill. App. 3d 666, 670 (1977)).

We hold that the record clearly establishes that the circuit court completely failed to exercise discretion in ruling on defense counsel's request for a continuance of defendant's trial, as it is devoid of evidence showing that the circuit court considered any of the relevant factors in denying the continuance. We further note that the appellate court, in upholding the judgment of the circuit court, similarly failed to consider these factors. The record supports the inescapable conclusion that the circuit court mechanically denied the continuance without engaging in thoughtful consideration of the specific facts and circumstances presented in this matter.

The history of this case does not show, and the circuit court did not find, any pattern of delay occasioned by defendant. The January 20, 1994, trial date was the first trial date set by the parties. Further, it appears that continuances prior to this date had been by the parties' agreement, and that defendant had not sought to delay the proceedings by requesting a change of counsel, a change of judge or by being uncooperative with counsel.

When the case was called for trial, defense counsel immediately informed the court that she had miscalendared defendant's trial date for January 26, and only discovered her mistake when defendant left her a telephone message the prior day stating that his case was set for trial the following day. In addition, counsel also stated that she had been on trial the previous two evenings before another judge, until 6 p.m. and 7:10 p.m. Due to her mistake and also her being on trial in other cases, she had failed to prepare for defendant's trial and candidly admitted, "I am not ready to go to trial today." In response, the circuit court, without further discussion, ruled: "[T]his has been set. I am sorry. We will pass this case for trial." Defense counsel immediately stated once again that she was "not ready for trial" and would "not be able to go to trial today." The circuit court tersely responded, "[i]t is irrelevant," and cut off any further explanation that could be offered by counsel, or any questions that the court itself could have posed to obtain the data it needed to exercise its discretion and render an informed decision. After making its summary ruling, the court, in no uncertain terms, indicated that the matter was closed. Nothing in the record shows that the circuit court considered the

relevant factors of the diligence of the movant and defense counsel's inability to prepare because she had been held to trial in another cause. The circuit court's erroneous statement that counsel's explanation was "irrelevant" distinguishes this case from those instances where parties dispute the correctness of a circuit court's weighing of relevant factors in deciding whether to grant or deny a continuance, and further supports our determination that it totally failed to exercise discretion in denying the continuance request.

Further, in ruling on the continuance request, the circuit court made no comment regarding the interests of justice, the severity of the double-murder charges or the complexity of the case. Similarly, the court made no mention of docket management, judicial economy or inconvenience to the parties or witnesses in connection with the continuance request. We note that counsel was not even afforded the opportunity to inform the court as to how long of a continuance she sought, which would be important to a court's consideration of a continuance request. See *People v. Childress*, 276 Ill. App. 3d 402, 413 (1995) (finding reversible error where the court, *inter alia*, failed to inquire of counsel how long a continuance would be needed). It is reasonable to assume that, because counsel erroneously recorded the trial date for the following week, she would have requested a short continuance until the time that she had originally set the matter. In addition, defendant requested a bench trial, which would have been relevant to the court's ruling, as it may have been more easily rescheduled than a jury trial. Further, the four witnesses that were present to testify for the State's case in chief were employees of the Chicago police department or the State's Attorney's office based in Chicago, and the record reflects that the State did not make an objection to defense counsel's request for continuance.

The State, however, now argues that the circuit court's ruling was not in error because the record "gives rise to a reasonable inference that the court perceived [the continuance request] as a delaying tactic," and that the court found counsel's "excuse" to be "disingenuous." We disagree. In support of its argument, the State relies upon the circuit court's curious remark to defense counsel–who was an appointed public defender–that "there isn't a private attorney in the business who hasn't tried to pull something like this," and that her request was "a dirty shame." We are unable to discern from the

-11-

record what could have prompted the court to make these disparaging remarks to counsel, which appear to be totally unrelated to defendant's case. Although we do not quarrel with the circuit court's apparent underlying sentiment that continuances may not be used to thwart the administration of justice or as a vehicle for improper delay, there is nothing in this record to suggest that such was the motivation for the request here. The circuit court evinced an openly hostile attitude toward defense counsel which, from our review of the record, appears to have no basis, and which was not explained by the court in its ruling. We cannot condone that whatever displeasure the court had with defendant's counsel–or with defense counsel in general–was visited upon defendant. It must be remembered that "[t]he constitutional guaranty that an accused shall have the assistance of counsel is not a barren right but one of inestimable value to him, and he should not be deprived of it by compelling counsel to go to trial unprepared and without an opportunity of studying the case." *People v. Blumenfeld*, 330 Ill. 474, 489 (1928).

Finally, we note that the entire exchange between defense counsel and the circuit court regarding counsel's request for a continuance comprises less than one page of trial transcript. The conclusion is inescapable that under the specific facts here, the circuit court completely abdicated its responsibility to conduct an informed deliberation of defense counsel's motion and, instead, immediately and reflexively denied the continuance request on the sole basis that the case had been set for trial. We take this opportunity to remind our bench and bar that at issue in a request for a continuance in a criminal trial is not only a circuit court's discretion as to whether to grant that request, but also a defendant's constitutional right to a fair, procedurally sound trial, which necessitates the making of a sufficient record to establish that a defendant has been afforded a fair process. Courts have inherent authority to guarantee each defendant a fair trial. *People v. Lawson*, 67 Ill. 2d 449, 456 (1977). "These powers enable the circuit court simultaneously to protect the legitimate rights of defendants, maintain respect for its calendar, and satisfy the public's interest in the fair and efficient prosecution of those accused of crime." *People v. Rudi*, 103 Ill. 2d 216, 222 (1984). Although " '[j]udicial patience need not be infinite' " (*People v. Johnson*, 205 Ill. 2d 381, 406 (2002), quoting *People v. Williams*, 92 Ill. 2d 109,

116 (1982)), we emphasize that " 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " *People v. Gosier*, 145 Ill. 2d 127, 157 (1991), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 931, 84 S. Ct. 841, 849 (1964).

Accordingly, we hold that the unique facts presented in the instant matter unquestionably support the conclusion that, in abdicating its duty to exercise discretion in ruling upon defense counsel's request for continuance, the circuit court committed error. This determination, however, does not end our inquiry. We further hold that the trial court's error was so serious as to affect the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. See *Piatkowski*, 225 Ill. 2d at 565. Defendant, therefore, has satisfied the second prong of the plain-error doctrine.

The result of the court's utter failure to exercise discretion in denying the continuance request was to force defendant to go to trial on double-murder charges despite defense counsel's repeated statements that she was unable to proceed because of lack of preparation. The 42 pages of trial transcript which comprise the entirety of defendant's double-murder trial reveal that defense counsel waived opening statement, raised no objections to the State's evidence, and engaged in limited cross-examination of the State's witnesses, which elicited information buttressing the State's case and which had already been established by the State through direct examination. Counsel also failed to move for a directed verdict at the close of the State's evidence, failed to call any witnesses for the defense, failed to present a comprehensive closing argument, and failed to file either a posttrial motion or a notice of appeal. In addition, counsel failed to litigate her previously filed motion to suppress defendant's inculpatory statement, which, in the words of the prosecutor, was the key piece of evidence and which, in the circuit court's ruling, was found to be "not disputed" and formed the exclusive basis of defendant's convictions.

In sum, under the specific facts presented, we hold that the circuit court's failure to exercise its discretion in reflexively, arbitrarily and mechanically denying defense counsel's request for a continuance was error in that the denial "embarrassed the accused in the

preparation of his defense and thereby prejudiced his rights." *Lewis*, 165 Ill. 2d at 327. We further find that this error was so serious that it demonstrably affected the fairness of defendant's trial and challenged the integrity of the judicial process. Although the circuit court had the opportunity and obligation to engage in informed deliberation and explain its reasoning in denying the continuance request, there is nothing in the record to demonstrate the exercise of its discretion. Accordingly, defendant has established plain error and he must be afforded a new trial.

As a final point, we find that there is no double jeopardy impediment to a new trial. After carefully reviewing the record, we conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. By this finding, however, we reach no conclusion as to defendant's guilt that would be binding on retrial. *Naylor*, 229 Ill. 2d at 610-11.

Because of our resolution, we need not consider defendant's arguments that trial counsel was ineffective.

## CONCLUSION

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed. We remand this cause to the circuit court for a new trial.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*