# Illinois Official Reports

## Appellate Court

---

### *People v. Dabney*, 2017 IL App (3d) 140915

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HIRAM DABNEY, SR., Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0915 |
| Filed | October 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 13-CF-454; the Hon. Kathy Bradshaw-Elliott, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Katherine M. Strohl, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James R. Rowe II, State's Attorney, of Kankakee (Patrick Delfino, Lawrence M. Bauer, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge concurred in the judgment and opinion.<br>Justice Schmidt specially concurred, with opinion. |

¶ 1 After a jury trial, defendant, Hiram Dabney, Sr., was convicted of four counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60 (West 2012)) and was sentenced to concurrent terms of 3½ years in prison. Defendant appeals, arguing that his constitutional rights under the confrontation clause were violated when the trial court admitted the child victim's videotaped statement into evidence at defendant's trial. We affirm the trial court's judgment.

¶ 2                                                    FACTS

¶ 3 In October 2013, defendant was charged with committing four counts of aggravated criminal sexual abuse against K.J. The charging instrument alleged that on August 10, 2013, defendant, who was 17 years of age or older, committed four separate acts of sexual conduct against K.J., who was under 13 years of age when the acts were committed, in that defendant, for the purpose of his own sexual arousal, knowingly placed (1) his hands on K.J.'s breasts (count I), (2) his hands on K.J.'s vagina (count II), (3) his hands on K.J.'s buttocks (count III), and (4) his penis against K.J.'s buttocks (count IV).

¶ 4 During pretrial proceedings, the State filed a notice of intent pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2012)), indicating that it intended to use certain out-of-court statements that K.J. had made to Bridgett B. (K.J.'s grandmother) and Andrea Longtin (a forensic interviewer) as evidence at defendant's trial. A section 115-10 hearing was later held on the statements. Both Bridgett and Longtin testified at the hearing. After listening to the testimony of the two witnesses, viewing a video recording of Longtin's interview of K.J., and listening to the arguments of the attorneys, the trial court ruled that K.J.'s out-of-court statements were admissible as long as K.J. testified at the trial.

¶ 5 A jury trial was held on the charges in July 2014. The evidence presented at the trial can be summarized as follows. Bridgett B. testified for the State that she was K.J.'s grandmother. K.J. was 11 years old at the time of trial. Defendant was in his 50s and had been a family friend for several years. On August 10, 2013, Bridgett picked up K.J. during the evening hours after Bridgett got off of work and brought K.J. to Bridgett's house. While they were at Bridgett's house, K.J. asked Bridgett "what happened to men that mess[ed] with little girls they shouldn't be touching." When Bridgett questioned K.J. about what she had asked, K.J. started crying and told Bridgett that defendant had been "touching on [her]" that day on her breasts and between her legs and that she had to push defendant away. Bridgett asked K.J. about the matter again the following morning, and K.J. told Bridgett the same thing, so Bridgett called the police. When Bridgett saw defendant later that day, she asked defendant why he would do that. Defendant stated that he did not know, ran out of the house, and left.

¶ 6 K.J. testified for the State that she had known defendant for almost her whole life. On August 10, 2013, during the morning hours, K.J. was at home and was in the hallway, cleaning up a mess from a popsicle that she and her little sister had eaten. K.J. was 10 years old at the time and was wearing a long nightgown. While K.J. was having a conversation with defendant, defendant touched K.J. on her bottom over her nightgown with his hand. Defendant was the only adult in the house at the time. K.J. pushed defendant away and went into the kitchen. Defendant followed her. Defendant came up behind K.J. and touched her bottom and her breast with his hands. Defendant was wearing pajama pants at the time. K.J. pushed defendant away

again and ran into the other room. K.J. was scared and worried and did not know if defendant had touched her on purpose or accidentally. She then went to the bathroom and brought her sister with her. When K.J. opened the bathroom door, defendant was standing there. Defendant told K.J. that she could not tell her grandma or mom what had happened or he would get in trouble. K.J. felt very scared at that time. When K.J.'s grandma returned to the home, defendant left.

¶ 7 Later that day, after defendant returned to the home, he again touched K.J.'s bottom over her nightgown while they were taking a fan from the home out to the shed. When K.J. went back into the house, defendant sat next to K.J. and started rubbing her elbow. K.J.'s mom was home at that time. Defendant stated that he had to catch the bus and left. Bridgett B. picked K.J. up later and took K.J. to her house, where K.J. told Bridgett about defendant touching her. K.J. told Bridgett the same thing the following morning. At some point, K.J. overhead Bridgett confront defendant about what had happened. Defendant told Bridgett that he was sorry and that he did not know why he had done that. K.J. later talked to a woman at the Children's Advocacy Center about what had happened.

¶ 8 In addition to the testimony set forth above, K.J. also responded to a few of the questions asked of her in direct examination by stating that she could not remember or that she was not sure.

¶ 9 Defense counsel asked K.J. several questions on cross-examination, and K.J. answered all of those questions. Defense counsel asked K.J. about where she had stayed the night before the incident; who was present at her home on the day of the incident; when those people who were present came to, or left from, the home; whether K.J. had discussed the incident with her mother and grandmother prior to her testimony at trial; whether K.J.'s memory was clear as to what had happened when the incident occurred; whether K.J. had told her stepdad that nothing had happened between her and defendant; whether she had told Bridgett about the incident when Bridgett first returned to the home that day after defendant had left; whether she knew that defendant was going to be coming back to the home later that day; and whether the police had taken any photographs of K.J. after the incident was reported. Defense counsel, however, did not ask K.J. any specific questions about any of the acts of sexual conduct that defendant had allegedly committed. In sum, defense counsel's cross-examination and re-cross examination of K.J. spanned about nine pages of the trial transcript.

¶ 10 Andrea Longtin testified for the State that she was a forensic interviewer with Child Network. On August 15, 2013, Longtin interviewed K.J. about the incident. The interview was video recorded. During her testimony, Longtin identified the video recording and anatomical line drawings of a female child and a male child. On the anatomical drawing of the female, K.J. had circled the vagina (labeled as the "private"), buttocks (labeled as the "bottom"), and breasts as the parts of her body that defendant had touched. On the drawing of the male, K.J. had circled the hands and the penis (labeled as the "genitals") as the parts of the body with which defendant had touched her. The video recording and the drawings were admitted into evidence without objection and were viewed by the jury. Of relevance to this appeal, the out-of-court statement that K.J. had made to Longtin on the video recording established that, in addition to touching K.J.'s butt and breasts with his hands, defendant had also touched K.J.'s vagina with his hands and her buttocks with his penis.

¶ 11 James Hill testified for the defense that he had been dating, and living with, K.J.'s mother for the past several years. Hill had a good relationship with K.J. and her siblings. A day or two

- 3 -

after the incident, after K.J. came home from her grandmother's house, Hill asked K.J. if defendant had touched her. K.J. had a puzzled look on her face—like a deer in the headlights. K.J. denied that defendant had touched her and told Hill that defendant had said something and raised his hand up but did not touch her.

¶ 12        After being duly admonished by the trial court, defendant chose not to testify. Following closing arguments and deliberations, the jury found defendant guilty of all four counts of aggravated criminal sexual abuse. After a sentencing hearing, the trial court sentenced defendant to concurrent terms of 3½ years in prison. Defendant appealed.

¶ 13                                           ANALYSIS

¶ 14        Defendant's sole contention on appeal is that his constitutional rights under the confrontation clause were violated when the trial court admitted K.J.'s videotaped statement into evidence at defendant's trial. Defendant asserts that K.J. did not appear for cross-examination as required by the confrontation clause as to two of the charges because she made no mention whatsoever during her trial testimony that defendant had allegedly touched her vagina with his hands and had touched her buttocks with his penis. Defendant acknowledges that he did not properly preserve this issue for appellate review because he failed to object to the admission of the statement at trial and failed to raise the issue in a posttrial motion but asks that we reach the merits of this issue, nevertheless, under the second prong of the plain-error doctrine. Based upon the merits of the alleged error, defendant asks that we reverse all four of his convictions and remand this case for a new trial.

¶ 15        In addition to asserting forfeiture, the State argues that the defendant's constitutional rights under the confrontation clause were not violated and that K.J.'s videotaped statement was properly admitted. The State asserts that the requirements under the confrontation clause for admission of the videotaped statement were satisfied because K.J. took the witness stand and answered all of the questions that defense counsel asked of her. The State asks, therefore, that we reject defendant's argument on this issue and that we affirm defendant's convictions. In the alternative, the State asserts that if we agree with defendant's argument on this issue, only two of defendant's four convictions should be reversed and remanded for a new trial; the other two convictions (and sentences) should stand.

¶ 16        The plain error doctrine is a very limited and narrow exception to the forfeiture rule that allows a reviewing court to consider unpreserved error if either one of the following two circumstances is present: (1) a clear or obvious error occurred, and the evidence in the case was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Walker*, 232 Ill. 2d 113, 124 (2009); *People v. Herron*, 215 Ill. 2d 167, 177-87 (2005); Ill. S. Ct. R. 615(a). Under either prong of the plain error doctrine, the burden of persuasion is on the defendant. *Walker*, 232 Ill. 2d at 124. If the defendant fails to satisfy that burden, the forfeiture of the issue must be honored. *Id.* The first step in conducting a plain-error analysis is to determine whether an error occurred. *Id.* at 124-25. To do so, a reviewing court must conduct a substantive review of the issue. *Id.* at 125.

¶ 17        The issue involved in the present case centers around the trial court's ruling on the admissibility of certain evidence—the video-recorded statement of the child victim. It is well

settled that a trial court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion. See *People v. Pikes*, 2013 IL 115171, ¶ 12; *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). In this particular case, however, the specific question to be decided on appeal is whether defendant's constitutional rights under the confrontational clause were violated by the admissibility of the statement. That question is a question of law that is subject to *de novo* review on appeal. See *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶ 47.

¶ 18    In a prosecution for a sex offense committed against a child, for an out of court statement of the child victim to be admissible at trial, the statement must comply not only with the requirements of section 115-10 of the Code but must also satisfy the requirements of the confrontation clause. *People v. Kitch*, 239 Ill. 2d 452, 469 (2011). The confrontation clause guarantees a criminal defendant the right to confront the witnesses against him or her. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8; *People v. Leonard*, 391 Ill. App. 3d 926, 934 (2009). In *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004), the United States Supreme Court noted that the confrontation clause places no restrictions on the admission of an out-of-court statement if the declarant testifies at trial and is present to defend or explain the statement; in other words, if the declarant appears at trial for cross-examination. *Kitch*, 239 Ill. 2d at 467; *Leonard*, 391 Ill. App. 3d at 934.

¶ 19    In general, a witness is considered to be present, available for, or subject to cross-examination when the witness takes the stand, is placed under oath, willingly answers questions, and the opposing party has an opportunity to cross-examine the witness. See *Leonard*, 391 Ill. App. 3d at 934. More specifically, as to an out-of-court statement, the key inquiry in determining whether the declarant is available for cross-examination is whether the declarant was present for cross-examination and answered all of the questions asked of him or her by defense counsel. *In re Brandon P.*, 2013 IL App (4th) 111022, ¶ 46, *aff'd*, 2014 IL 116653. The confrontation clause guarantees an opportunity for effective cross-examination; it does not guarantee cross-examination that is effective in whatever way the examining party may want. *Leonard*, 391 Ill. App. 3d at 934. Thus, there are no confrontation clause problems merely because a witness's lack of memory precludes the defendant from cross-examining the witness to the extent the defendant would have liked. *Id.* at 934-35. Furthermore, that defense counsel chose to let the witness's direct testimony stand and not ask additional or specific questions about a matter does not make a witness unavailable for cross-examination for the purpose of the confrontation clause. See *Sundling*, 2012 IL App (2d) 070455-B, ¶ 62.

¶ 20    In the present case, after having reviewed the record, we find that K.J. was available for cross-examination at defendant's jury trial as necessary to satisfy the confrontation clause. K.J. took the witness stand and testified that, on the date in question, defendant had touched her breasts and bottom (buttocks) with his hands. While it is true that K.J. did not testify in court that defendant had also touched her vagina with his hands and her buttocks with his penis, that testimony was not required under the confrontation clause for K.J.'s video recorded statement to be admissible. See *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 52 (a declarant need not testify to every element of the charged offense for the declarant's out-of-court statement to be admissible under section 115-10 of the Code). Defense counsel was given the opportunity to cross-examine K.J., and K.J. answered all of the questions that were asked of her by defense counsel. Therefore, under the established law on this issue, K.J. was present for cross-examination as to her out of court statements (only the videotaped statement was challenged in this appeal). See *Brandon P.*, 2013 IL App (4th) 111022, ¶¶ 43-51 (child victim

of sex offense appeared for cross-examination for the purpose of the confrontation clause where child victim was present for defendant's trial and testified in court and where defense counsel chose not to cross-examine child victim, even though child victim was unwilling or unable to testify on direct examination about the events that were the subject of her statements to the police); *Lara*, 2011 IL App (4th) 080983-B, ¶¶ 45-52 (child victim of sex offense appeared for cross-examination for purpose of the confrontation clause where child victim was present for defendant's trial, testified in direct examination as to some of the sexual acts that defendant had allegedly committed against her, and answered all of the questions posed to her by defense counsel in cross-examination, even though child victim did not state in her direct testimony at trial that defendant had placed his mouth on her vagina, as was alleged in the charging instrument); *People v. Bryant*, 391 Ill. App. 3d 1072, 1079-83 (2009) (child victim of sex offense appeared for cross-examination for the purpose of the confrontation clause where child victim testified in court at trial, was present for cross-examination, and answered the questions asked of her by defense counsel, even though child victim was unwilling or unable to testify on direct examination about defendant making her put her mouth on his private part, as alleged in one of the charges); *People v. Kennebrew*, 2014 IL App (2d) 121169, ¶¶ 33-42 (defendant's postconviction petition alleging ineffective assistance of counsel was properly dismissed because no basis in the law supported the argument raised in the petition—that the admission of child victim's videotaped statements violated the confrontation clause—where child victim was present for defendant's trial, testified as to some of the sexual acts that defendant had committed against her, was subject to cross-examination, and answered all of the questions that were posed to her by defense counsel, even though some of her answers to the questions posed on direct-examination were that she did not remember); *People v. Sharp*, 391 Ill. App. 3d 947, 953-54 (2009) (child victim of sex offense appeared for cross-examination for the purpose of the confrontation clause where child victim appeared at defendant's trial, testified, and answered all of the questions posed to her by defense counsel on cross-examination, even though child victim was unwilling or unable to testify in court about what happened after defendant pulled her into the room and pushed her down to the floor); *People v. Major-Flisk*, 398 Ill. App. 3d 491, 499-500, 503-08 (2010) (child victim of sex offense appeared for cross-examination for the purpose of the confrontation clause where child victim appeared at defendant's trial, testified that defendant had made the victim sit on defendant's hand, and answered all of the questions posed to him by defense counsel on cross-examination, even though child victim did not remember certain conversations or testify in greater detail as to the manner in which defendant had touched him). Although defense counsel in this case was faced with a difficult strategic choice to make as to whether to specifically ask K.J. in cross-examination about the other acts of sexual conduct that had been charged, those strategic considerations do not make K.J. unavailable for cross-examination for the purpose of the confrontation clause. See *Lara*, 2011 IL App (4th) 080983-B, ¶ 51.

¶ 21     To the extent that our decision in this case can be read as being inconsistent with the appellate court's ruling in *People v. Learn*, 396 Ill. App. 3d 891, 898-902 (2009), the main case relied upon by defendant in support of his argument on this issue, we respectfully disagree with the conclusion reached by the appellate court in that case and do not believe that it reflects the current state of the law on this issue. We also believe that the facts of *Learn* are distinguishable from the facts of the present case because in *Learn* the child victim only provided background

testimony in court and did not testify at all about any events that gave rise to the criminal charge against the defendant (the victim did not accuse defendant).

¶ 22 Therefore, for the reasons stated, we find that the admission of K.J.'s videotaped statement did not violate defendant's constitutional rights under the confrontation clause. Because no error occurred at defendant's trial, defendant's forfeiture of this issue must be honored. See *Walker*, 232 Ill. 2d at 124.

¶ 23                                                        CONCLUSION
¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 25 Affirmed.

¶ 26 JUSTICE SCHMIDT, specially concurring.
¶ 27 I concur but write separately to point out another fact that seems extremely relevant to the confrontation clause issue. While the videotape in question was shown after the victim left the stand, defense counsel had a copy of that videotape prior to trial and was aware that the State would be offering it into evidence. The fact that defense counsel made a strategic decision not to cross-examine the victim about testimony he knew would be coming through the videotape does not render the victim unavailable for cross-examination.