2021 IL App (1st) 171721-U

SIXTH DIVISION
January 22, 2021

No. 1-17-1721

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 23742 |
| | ) | |
| SOLOMON MUHAMMAD-ALI, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1   *Held*:  Trial court abused its discretion where it denied defense counsel's motion for a continuance due to illness.

¶ 2   The defendant in this case, Solomon Muhammad-Ali, was convicted of aggravated domestic battery following a jury trial. The trial court sentenced him to three years in prison. On appeal, Mr. Muhammad-Ali argues that (1) the trial court abused its discretion in denying his counsel's motion for a continuance where counsel was suffering from an illness, and that this prevented him from receiving a fair trial, (2) the State improperly asked the jury to empathize with

the victim to bolster her credibility, and (3) the trial court failed to conduct a proper inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), after counsel alleged his own ineffectiveness.

¶ 3    The State in this case failed, despite being granted three continuances, to file a timely brief in this matter. On October 2, 2020—seventeen months after Mr. Muhammad-Ali had filed his opening brief and over nine months after the last date given for the State to respond—this court granted Mr. Muhammad-Ali's motion to decide the issues based solely on his opening brief and the record on appeal.

¶ 4    For the following reasons, we reverse Mr. Muhammad-Ali's conviction and remand for a new trial.

¶ 5                                   I. BACKGROUND

¶ 6    Mr. Muhammad-Ali was charged with aggravated domestic battery following an incident with his then-girlfriend, Ashley Smith. He was assigned a public defender on January 9, 2014. On March 24, 2014, private attorney Thomas O'Gara filed an appearance on behalf of Mr. Muhammad-Ali, and the public defender's office withdrew from the case. At the request of Mr. Muhammad-Ali, the court held a conference, pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), on June 9, 2014, and the case was continued by agreement until June 19 for Mr. Muhammad-Ali and his family to consider the State's offer. On June 19, 2014, Mr. O'Gara withdrew from the case and the public defender's office again filed an appearance. The parties continued the case by agreement multiple times in what appears from the record to be the normal course of discovery.

¶ 7    Between April 22, 2015, and September 16, 2015, Mr. Muhammad-Ali made several motions for continuances, while attempting to again obtain new private counsel. During the September 16 hearing, the trial court told Mr. Muhammad-Ali, "I will give you a 30-day date, and

I will mark it final. If you don't have a private attorney by then, let [the public defender] know beforehand. He is working on the case, but we need to move this forward." Mr. Muhammad-Ali was unable to obtain a private attorney by the next hearing, and the public defender's office was assigned to continue with the case. On November 30, 2015, Mr. Muhammad-Ali filed his answer to discovery and the case was set for a bench trial on January 26, 2016.

¶ 8 On January 26, 2016, Mr. Muhammad-Ali again moved for a continuance to obtain private counsel, which the court granted. On February 8, 2016, the public defender's office withdrew from the case, and private attorney Bernard Shelton filed an appearance on behalf of Mr. Muhammad-Ali. Mr. Shelton moved for continuances during that hearing and again on March 2, 2016, to obtain discovery materials from Mr. Muhammad-Ali's former public defender. The parties then continued the case by agreement until July 25, 2016, when Mr. Muhammad-Ali moved for a continuance to put together a mitigation packet. The case was continued several more times by agreement or court order until trial was set for Monday, February 27, 2017.

¶ 9 On the morning trial was set to begin, Mr. Shelton made an oral motion for a continuance. He explained to the court that he recently had food poisoning and was still recovering. He stated his voice was gone and that he was "not in a position to give [Mr. Muhammad-Ali] the jury trial that he deserves in this matter." The court responded, "[w]ell, Mr. Shelton, we can pick [the jury] today, and then you'll have the rest of the day until tomorrow. And then we could [begin] the trial [tomorrow]. So all we have to do is get through picking today at least." Mr. Shelton again stated that he was "not in a position to give [Mr. Muhammad-Ali] [his] best jury trial selection or perform a trial tomorrow being that [he was] just coming down from a bad food poisoning." The court stated, "the problem is sometimes, you know, we do have to sacrifice" and later noted, "I understand, Mr. Shelton, your condition, so I'm trying to be as, you know, as reasonable as possible

here to give you a break so that you can proceed to trial. But this is a [2013] case. It's an old case."
The parties then proceeded with jury selection. The following day, the trial court was informed that Mr. Shelton was hospitalized and could not appear in court. The trial court continued the case until the next day, which was Wednesday, March 1, 2017. Mr. Shelton appeared then and "resubmit[ted]" his oral motion for a continuance, stating:

> "[W]hen we came in on Monday, I advised the Court that I had just been ill and was just getting over an illness and that I was not healthy. The Court—what the Court said is what you would do for us is to just allow me just to pick the jury that day and we will go forward and start the trial the next day. I had no choice. We went forward. *** Late Monday into Tuesday I became seriously ill where I had to go to the emergency room with extreme swelling to my face. Upon being seen by medical personnel, I was advised that they suspected that I had what is called angioedema and *** I was advised that that is something that can come on and present in a manner of swelling to the face or various body parts immediately after a serious illness or a bout with someone's immune system and while they can't be certain that's what it is, I was given medication to deal with the symptoms, but you can't prevent that. *** It may pop up over the next few days while your body still heals from the virus and the virus and/or the food poisoning that I was recovering from. That was yesterday. Today is Wednesday. I am still not 100 percent *** and to make Mr. [Muhammad]-Ali who is facing the penalties of a Class 2 felony *** go forward with his attorney in this condition *** I believe is [a] violation of [his] right to a fair trial."

The court initially responded by requesting the parties engage in a Rule 402 conference. Mr. Muhammad-Ali rejected the offer of three years in prison. The court then denied the motion for a continuance, stating:

"Monday I know that I denied your motion for a continuance. I thought that you did a fin[e] job. You were prepared in your jury selection. You were able to get checked out and go to the doctor and get medication. I understand that you're not 100 percent, however, based on, you know, your ability to—you know, the record that you made, your ability as an attorney, how you're functioning in court, I don't see any reason that you cannot proceed to trial, so we are going to proceed to trial today."

¶ 10    The trial then commenced. The State presented the testimony of Chicago police officer David Brown and Ms. Smith. Officer Brown testified that he arrested Mr. Muhammad-Ali on November 22, 2013, after receiving an investigative alert that he was suspected of committing a crime.

¶ 11    Ms. Smith testified that she had known Mr. Muhammad-Ali since fourth grade. They began a romantic relationship in 2013 and dated for about two months. At around 7 a.m. on November 19, 2013, Ms. Smith, a first-grade teacher, was preparing to go to work. She testified that Mr. Muhammad-Ali, who had spent the night at her apartment, accused her of cheating on him with a coworker. He knocked coffee and juice out of her hands, pushed her against the wall, and choked her so she was "[b]arely" able to breathe. He eventually released her from the chokehold, "grabbed [her] arm and then *** pushed [her] into the living room." He then pinned her down on the couch and continued to ask who she was cheating on him with. She threatened to scream, and he released her and left the apartment. Ms. Smith testified that she called her sister, who came over to her apartment. Once her sister arrived, Ms. Smith called the police.

¶ 12    On cross-examination, Ms. Smith admitted that she had gotten into a fight with Mr. Muhammad-Ali the night before when he refused to tell her who was calling his cell phone—a topic they had argued about before. She also testified that she did not take any photographs of her

injuries or go to the hospital. On redirect, Ms. Smith clarified that she did not go to the hospital because she was in shock and that, while she was dealing with emotional pain, she did not feel like anything was broken or notice any bruising.

¶ 13    The State rested. Mr. Muhammad-Ali moved for a directed verdict, which the court denied. The defense then rested.

¶ 14    During its closing argument, the State argued the following, giving rise to Mr. Muhammad-Ali's claim that the prosecution improperly asked the jury to empathize with the victim:

"Just imagine, you have been here three days and the amount of inconvenience that you experienced. Think about the inconvenience that she has experienced for the last three and a half years; meeting with police officers, coming to court, coming to testify again in front of a group of strangers. *** [Y]es, she didn't call 911 immediately and there is nothing unreasonable about that. Think about it. If you had been friends with someone for many years and then had a dating relationship or obviously you had feelings for them strong enough that you were in a dating relationship for two months and let them stay the night, wouldn't you have a second thought if something like this happened? Wouldn't you possibly call a family member first?"

¶ 15    The jury found Mr. Muhammad-Ali guilty of aggravated domestic battery. Mr. Muhammad-Ali filed a motion for a new trial, arguing in part that his right to a fair trial was violated when the trial court denied his motion for a continuance based on Mr. Shelton's illness. In denying the motion for a new trial, the court stated:

"It really wasn't that this is an old case and that's why I forced you to go to trial. I just did not see a basis, based on how I saw you, how you were acting, how you carried yourself, nothing that I felt would prevent you from accomplishing and being a good lawyer on

behalf of your client.

　　　　And I found nothing during the trial that showed me otherwise. I found that you did a fine job representing your client. I did not see anything that would cause me to find that somehow Mr. Muhammad-Ali's trial was unfair in any way."

¶ 16　Mr. Muhammad-Ali was sentenced to three years in prison. This appeal follows.

¶ 17　　　　　　　　　　　　　II. JURISDICTION

¶ 18　The trial court denied Mr. Muhammad-Ali's motion to reconsider his sentence on May 12, 2017, and Mr. Muhammad-Ali timely filed his notice of appeal on May 30, 2017. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments of conviction in criminal cases.

¶ 19　　　　　　　　　　　　　III. ANALYSIS

¶ 20　On appeal, Mr. Muhammad-Ali argues that (1) the trial court abused its discretion in denying defense counsel's motion for a continuance, (2) the assistant state's attorney made an improper closing argument, and (3) the trial court failed to conduct a proper inquiry pursuant to *Krankel*, 102 Ill. 2d 181, after counsel alleged his own ineffectiveness. Because we find that it was an abuse of discretion to deny trial counsel's motion for a continuance, we reach only that issue and reverse and remand this case for a new trial.

¶ 21　A trial court's decision to grant or deny a motion for a continuance is reviewed for an abuse of discretion. *People v. Walker*, 232 Ill. 2d 113, 125 (2009). There is no bright line rule for whether a court has abused its discretion in denying a motion for a continuance—such a determination depends on the facts and circumstances in each case. *Id.* "Where it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and

7

thereby prejudiced his rights, a resulting conviction will be reversed." *People v. Lewis*, 165 Ill. 2d 305, 327 (1995).

¶ 22    Factors to consider when deciding whether to allow a motion for a continuance are "the diligence of the movant, the right of the defendant to a speedy, fair and impartial trial, and the interests of justice." *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). Additional relevant factors include the history of the case and its complexity, whether counsel was unable to prepare for trial because he or she was held to trial in another cause, the gravity of the charges, docket management, judicial economy, and inconvenience to the parties and witnesses. *Walker*, 232 Ill. 2d at 125-26.

¶ 23    The Illinois Code of Criminal Procedure (Code) specifically addresses continuances, in relevant part, as follows:

> "A written motion for continuance made by defendant more than 30 days after arraignment
> may be granted when: (1) Counsel for the defendant is ill, has died, or is held to trial in
> another cause; or (2) Counsel for the defendant has been unable to prepare for trial because
> of illness or because he has been held to trial in another cause ***." 725 ILCS 5/114-
> 4(b)(1),(2) (West 2016).

¶ 24    Mr. Muhammad-Ali argues on appeal that the trial court failed to properly consider the relevant factors and "refused to grant the continuance at the expense of [his] right to be represented by a healthy and competent counsel." Mr. Muhammad-Ali also argues that the court's refusal to grant the motion "denied [his] trial attorney adequate time to recover and time to prepare for trial." Mr. Muhammad-Ali fully preserved this issue by objecting at trial and raising the issue in his posttrial motion. *People v. Enoch*, 112 Ill. 2d 176, 186 (1988).

¶ 25    Trial counsel made two oral motions for continuance based on illness. Prior to jury selection, counsel informed the court he was not ready because he was just getting over food

poisoning. The trial court denied the motion, explaining only that it was "an old case." Prior to the trial itself, counsel again informed the court he was not well and in fact had been hospitalized on the night following jury selection. Counsel said he received a suspected diagnosis and medication "to deal with the symptoms." He stressed he was not fully recovered and that he believed Mr. Muhammad-Ali's right to a fair trial would be violated were he to represent him in his current condition. The court, disregarding counsel's statements concerning his health, denied the second motion because it thought trial counsel—prior to being hospitalized—had done a "fin[e] job" with jury selection and, based on how he was then functioning, the court "d[id]n't see any reason that [he] c[ould ]not proceed to trial." The court repeated this reasoning in denying Mr. Muhammad-Ali's motion for a new trial, stating "[i]t really wasn't that this is an old case" but rather, it was because the court believed trial counsel seemed to be functioning adequately and "found nothing during the trial that showed [the court] otherwise."

¶ 26 We agree with Mr. Muhammad-Ali that *Walker* is instructive on this point. In *Walker*, our supreme court held that it was plain error for the trial court to deny the defendant's motion for a continuance. *Walker*, 232 Ill. 2d at 131. The defendant in that case was charged with first and second degree murder. *Id.* at 116. On the day trial was set to commence, defense counsel informed the court that she had recorded the wrong trial date in her calendar and was not prepared for trial. *Id.* at 117. The court denied the motion, stating that counsel's unpreparedness was "irrelevant" and that "[t]here isn't a private attorney in the business who hasn't tried to pull something like this." *Id.* On review, the supreme court held that "the [trial] court completely failed to exercise discretion in ruling on defense counsel's request for a continuance of defendant's trial, as [the record was] devoid of evidence showing that the circuit court considered any of the relevant factors in denying the continuance." *Id.* at 126. The court noted that there was no "pattern of delay occasioned by

[the] defendant," that this was the first trial date, that the State had not objected to the continuance, that "continuances prior to this date had been by the parties' agreement, and that [the] defendant had not sought to delay the proceedings by requesting a change of counsel, a change of judge or by being uncooperative with counsel." *Id.* The court further reasoned:

> "[T]he entire exchange between defense counsel and the circuit court regarding counsel's request for a continuance comprises less than one page of trial transcript. The conclusion is inescapable that under the specific facts here, the [trial] court completely abdicated its responsibility to conduct an informed deliberation of defense counsel's motion and, instead, immediately and reflexively denied the continuance request on the sole basis that the case had been set for trial." *Id.* at 129.

¶ 27    We find that the trial court in this case likewise failed to exercise its discretion in ruling on the motion for a continuance. At no point did the trial court in Mr. Muhammad-Ali's case demonstrate any real consideration of counsel's diligence or the interests of justice. Likewise, the court did not appear to factor in docket management, convenience to the parties, judicial economy, gravity of the charges, or complexity of the case. It could be argued that the court touched on Mr. Muhammad-Ali's right to a speedy, fair, and impartial trial when it stated, "this is an old case." However, " 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " *People v. Gosier*, 145 Ill. 2d 127, 157 (1991) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)); see also *People v. Lott*, 66 Ill. 2d 290, 297 (1977) ("[s]peedy administration of justice is desirable, but the desire for speed must not be allowed to impinge upon the constitutional requirement of a fair opportunity to defend"). We also agree with Mr. Muhammad-Ali that any inconvenience would have been minimal considering there were only two witnesses and the first motion for a continuance occurred

10

before any jurors had even been selected.

¶ 28    We recognize that there are differences between this case and *Walker*. Unlike Mr. Walker, this was Mr. Muhammad-Ali's second trial date, not his first; and unlike the lawyers in *Walker*, Mr. Shelton, as well as the public defender in this case, had previously moved for continuances. Mr. Muhammad-Ali also delayed the proceedings by requesting a change of counsel more than once. However, a desire for a private attorney and trouble being able to afford retaining one should not bar a legitimate request for a continuance. And while there were prior continuances, nothing suggests that either Mr. Shelton or Mr. Muhammad-Ali was attempting to intentionally delay the trial. For example, Mr. Shelton initially moved to continue because he had yet to receive discovery from the public defender. In addition, the statute specifically provides that illness is a legitimate basis for a continuance. 725 ILCS 5/114-4(b)(1)(2) (West 2016). See also *People v. Wilson*, 31 Ill. App. 3d 1067, 1069 (1975) (stating that "illness is a legitimate excuse for a continuance"). Moreover, in this case, in contrast to *Walker*, the issue has been fully preserved. Mr. Muhammad-Ali need not demonstrate, as the defendant in *Walker* was required to do to establish second-prong plain error, that the trial court's error was "so serious as to affect the fairness of [the] defendant's trial and challenged the integrity of the judicial process." *Walker*, 232 Ill. 2d at 130.

¶ 29    Simply put, Mr. Muhammad-Ali was facing serious charges and a number of years in prison. His fundamental right to counsel included the right to effective assistance of counsel (*People v. Holmes*, 141 Ill. 2d 204, 217 (1990)), which "carries with it the right of counsel to have adequate time to prepare the defense" (*Lewis*, 165 Ill. 2d at 326). The court abused its discretion by failing to consider the relevant factors in ruling on Mr. Muhammad-Ali's motion for a continuance and instead determining, contrary to what Mr. Shelton repeatedly stated, that Mr. Shelton was "fine." Mr. Shelton was forced to proceed to trial while ill and with little time to

prepare during the preceding days. This refusal to grant additional time to allow Mr. Shelton to recover from his illness and properly prepare for trial clearly "embarrassed the accused in the preparation of his defense and thereby prejudiced his right [to a fair trial]." *Lewis*, 165 Ill. 2d at 327.

¶ 30    We note that, because more than 30 days had passed since Mr. Muhammad-Ali's arraignment, under the statute, his motion should have been in writing and supported by an affidavit. 725 ILCS 5/114-4(a) (West 2016). Mr. Muhammad-Ali refers to no written motion or affidavit in his brief and we see none in the record. However, we have recognized that "an abuse of discretion may be found even in the absence of a written motion and supporting affidavit." *People v. Harris*, 222 Ill. App. 3d 1089, 1095 (1991) (citing *People v. Peruscini*, 188 Ill. App. 3d 803 (1989). In *Peruscini*, we held that the State's oral motion for a continuance based on the unavailability of a material witness "substantially complied with the rule" due to the "emergency nature of the motion." *Peruscini*, 188 Ill. App. at 807. The same reasoning applies here, where counsel's unexpected illness was certainly an emergency. In addition, the trial court did not deny the continuance on the grounds that there was no written motion and the State never raised this argument at any stage in this case. *People v. Vasquez*, 388 Ill. App. 3d 532, 553 (2009) (the State forfeits arguments not made before the trial court).

¶ 31    Because we find that the trial court abused its discretion in failing to grant a continuance due to Mr. Shelton's illness, we do not need to reach the other two issues that he raises on appeal.

¶ 32                          IV. CONCLUSION

¶ 33    For the foregoing reasons, we reverse Mr. Muhammad-Ali's conviction and remand for a new trial.

¶ 34    Reversed and remanded.