NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220145-U

NO. 4-22-0145

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 19, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| DARRIN L. SMITH, | ) | No. 21CF407 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Knecht and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   No plain error occurred in the circuit court's purported misstatement of defendant's possible eligibility for extended-term sentencing during Rule 402(a) admonishments following a negotiated guilty plea agreement. Moreover, defendant failed to establish ineffective assistance of counsel because there was no showing that, but for the purported failure of counsel, the outcome of the proceedings would have been different.

¶ 2   Defendant, Darrin L. Smith, was charged with possession of another's debit card (Class 4 felony) (720 ILCS 5/17-32(b), (c)(2) (West 2020)) and theft (Class 3 felony) (*id.* § 16-1(a), (b)(4) (West 2020)). The parties later presented a negotiated plea agreement to the circuit court pursuant to which defendant pleaded guilty to both counts in exchange for a sentence of 24 months' probation, 19 days in jail with credit for time served, and a fine.

¶ 3   Defendant subsequently filed a posttrial motion seeking to vacate his guilty plea. He stated that he had not been honest with the circuit court and claimed he had pleaded guilty so

he could get out of jail in time to spend Halloween with his three-year-old son. He argued that his desire to spend Halloween with his son meant that he accepted the plea under duress. The circuit court denied the motion.

¶ 4        On appeal, defendant has abandoned his duress argument, but he now argues that (1) the circuit court incorrectly advised him of his potential eligibility for extended-term sentencing and (2) alternatively, his counsel's failure to correct the circuit court's misstatements constituted ineffective assistance of counsel. The State asserts that defendant forfeited these issues by failing to raise them before the circuit court.

¶ 5        We affirm.

¶ 6                                I. BACKGROUND

¶ 7        In July 2021, defendant was indicted for possession of another's debit card (Class 4 felony) (720 ILCS 5/17-32(b), (c)(2) (West 2020)) and theft (Class 3 felony) (*id.* § 16-1(a), (b)(4) (West 2020)). After failing to appear in court in August and September, a no-bond warrant was issued. Defendant was arrested and held in county jail through the date of his plea hearing.

¶ 8        On October 25, 2021, counsel presented a fully negotiated plea agreement pursuant to which defendant would plead guilty to both counts in exchange for 24 months' probation, 19 days in jail with credit for time served, and a fine. The following conversation took place between the circuit court, counsel, and defendant at the plea hearing:

            "MS. MULLIKIN [ASSISTANT STATE'S ATTORNEY]: The defendant
        would be pleading guilty to both counts of the bill of indictment: Count 1
        possession of another's debit card, a Class 4 felony; and Count 2, theft, a Class 3
        felony. He would be placed on probation for a term of 24 months, the terms and
        conditions of which are enumerated within the certificate of probation. One of those

terms being that the defendant serve a jail sentence of 19 days with 19 days of credit towards his sentence. And it appears that the defendant would be extended term eligible.

THE COURT: On both?

MS. MULLIKIN: Yes."

¶ 9 Although not discussed in any detail in the proceedings below, the pretrial criminal history suggested that the prior felonies that gave rise to defendant's extended-term eligibility included two Florida offenses of which defendant was convicted within 10 years of the convictions at issue here: (1) stalking, classified as a Class 3 felony under Florida law (FSA § 784.048(3) (West 2019)) and (2) written threat to kill or injure, classified as a Class 2 felony under Florida law (FSA § 836.10(2)(a) (West 2019)); and an Illinois offense: aggravated fleeing or attempting to elude a peace officer, a Class 4 felony (625 ILCS 5/11-204.1(a)(1), (b) (West 2010)).

¶ 10 The circuit court continued its dialogue with counsel and the parties:

THE COURT: Thank you. Mr. Bradshaw, is this your defense agreement?

MR. BRADSHAW [DEFENSE COUNSEL]: Yes, Judge.

THE COURT: Mr. Smith [DEFENDANT], is this your understanding and agreement?

MR. SMITH: Yes, sir."

¶ 11 Defendant was asked by the circuit court whether he had read and understood the agreements presented to the court that day and whether he had gone over them with his attorney in person; defendant responded "yes" to both questions. The court also asked defendant whether his attorney had answered all of his questions and whether he was satisfied with his attorney's services, and defendant again responded "yes" to both questions.

¶ 12       The following discussion then occurred:

"THE COURT: Do you know that you could have persisted in your plea of not guilty and requested a trial?

MR. SMITH: Yes, sir.

THE COURT: And had you done so and been convicted because of your prior record the worst that you faced on Count l could have been six years in prison and on Count 2 ten years in prison at day-for-day rates, large fine, and a year of mandatory supervised release to serve thereafter. Or if convicted of either of those, the least you faced could have been up to 30 months of probation, 180 days in jail, and a large fine; understood?

MR. SMITH: Yes, sir."

¶ 13       Following a recitation of the factual basis by the prosecution, the court asked defendant whether anyone was "forcing [him] "to do this," to which he responded, "No, sir." The court then found the plea was "given knowingly, voluntarily and will be accepted and entered of record today." Per the final sentencing order, defendant was sentenced to 24 months' probation and 19 days in jail, plus a financial assessment of $1157.

¶ 14       Defendant filed a timely *pro se* motion to withdraw the guilty plea, claiming he had not been "truthful and honest with the court" and stating that he had accepted the plea solely because he wanted to be home with his three-year-old son for Halloween. According to defendant: "The most important thing to me that week, was that I get out of jail, so that I could be with and make my 3 year old [*sic*] son happy, going with him for Halloween." Defendant added, "I was overwhelmed with the wanting to get out of jail, to make my son happy." He asked the court to undo his guilty plea and sentence and allow him to proceed to trial on the charges.

¶ 15        An amended motion prepared and filed by counsel asserted that defendant "feels as though his plea was given under duress and that pleading was the only way to secure his release from jail which was imperative due to his desire to make his three (3) year old son happy by going with him for Halloween." It further stated that "his three (3) year old son [was] the most important thing" to defendant and that he "felt forced and under duress to plea to the charges despite his factual innocence in order to secure his release."

¶ 16        At the hearing on the motion, defendant orally reiterated his written grounds for relief, adding that Halloween was important to his son, "something that he enjoys." Defendant testified, "And when that time came, I was in jail. And when this plea agreement came to me, *** I talked to [counsel]," and "I was like, I'll take this plea, but I got to admit it because I gotta be out for my son. It's important to him. It's important to me ***. So I took the plea. I admitted it." Defendant said, "To me, there's nothing more important than my little boy right here, and it made both of our day at that time."

¶ 17        After restating his innocence, defendant testified, "I told [counsel] I didn't do it but whatever I had to do to get out to be with my son, you know, I was willing to do." Defendant acknowledged that he had been advised by counsel of his right to persist in his not guilty plea and to set the matter for trial and agreed that he intended to plead guilty to secure his release "[s]o [he] could be with my son on Halloween." Defendant added, "I wanted to give him what he wanted at that time, and whatever cost it was, I had to do."

¶ 18        The State responded that the record showed the plea was given voluntarily and without duress and that defendant had agreed to the factual basis. Moreover, it stated that "wanting to get out of jail in order to celebrate Halloween with your child is no where [sic] near sufficient duress to vacate a guilty plea."

¶ 19    Defendant's motion was denied.

¶ 20    This appeal followed.

¶ 21                            II. ANALYSIS

¶ 22    Defendant argues that the circuit court erred in admonishing him prior to entering his negotiated guilty plea that he was eligible for extended-term sentencing on the Class 3 offense for theft. According to defendant, "no one ever specified what prior offenses qualified [defendant] for a possible sentence of up to 10 years in prison for the Class 3 felony offense." Defendant asserts that he "could not have faced an extended-term sentence for the theft offense based on his prior criminal record" and that "his guilty plea was not knowing and voluntary because it was based on this erroneous sentencing admonishment," which he claims caused him to "give up his rights to trial." Lastly, defendant argues ineffective assistance of counsel for failing to advise him of the possible extended-term sentencing mistake.

¶ 23    The State argues that defendant forfeited the admonishment issue because he failed to raise it before the circuit court at the time of his sentencing hearing or in his motion to vacate. The failure to set forth the alleged errors made by the circuit court and to specify grounds for a new trial in a posttrial motion constitutes a procedural default of the issues on review in the absence of plain error. See *People v. Walker*, 232 Ill. 2d 113, 124 (2009). Defendant acknowledges this failure in his brief but asks us to review the issue under the plain-error doctrine. See Ill. S. Ct. R.615(a) (eff. Jan. 1, 1967).

¶ 24                    A. Alleged Error in Plea Admonishment

¶ 25                        1. *Plain-Error Doctrine*

¶ 26    The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *In re D.D.*, 2022 IL App (4th) 220257, ¶ 31 (quoting *People v. Sargent*, 239 Ill. 2d 166, 189 (2010)).

¶ 27　　A misunderstanding as to the minimum and maximum sentences can fall within the second prong of the plain-error rule. See *People v. Hausman*, 287 Ill. App. 3d 1069, 1071-72 (1997); *People v. Wilkins*, 343 Ill. App. 3d 147, 149 (2003).

¶ 28　　We begin our plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189; *In re D.D.*, 2022 IL App (4th) 220257, ¶ 31. If error did occur, we then consider whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90. "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). If the defendant fails to meet his or her burden of persuasion, "the procedural default [must] be honored." *Id.*; *Walker*, 232 Ill. 2d at 124.

¶ 29　　　　　　　　　2. *Rule 402(a) Plea Admonishments*

¶ 30　　Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) mandates that, before accepting a guilty plea, a circuit court must admonish the defendant "concerning the nature of the charge, the minimum and maximum sentences, the right to plead guilty or not guilty, and the rights that are waived by pleading guilty." *People v. Sharifpour*, 402 Ill. App. 3d 100, 114 (2010). "The purpose of Rule 402 admonishments is to ensure that a defendant understands his plea, the rights

he has waived by pleading guilty and the consequences of his action." *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009).

¶ 31　　　　　Advising a defendant about the minimum and maximum sentences necessarily means advising about any extended-term sentences that might apply. Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012). Extended-term sentencing is governed by section 5-3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(1) (West 2020)), which permits a circuit court to consider additional factors "as reasons to impose an extended term sentence" upon any offender. The goal of this section "is to impose harsher sentences on offenders whose repeated convictions have shown their resistance to correction." *People v. Robinson*, 89 Ill. 2d 469, 476 (1982).

¶ 32　　　　　Illinois law is well settled that Rule 402 requires "substantial, not literal, compliance with its provisions." *Dougherty*, 394 Ill. App. 3d at 138. Illinois courts have found substantial compliance "where the record indicates that the defendant understandingly and voluntarily entered his plea, even if the circuit court failed to admonish defendant as to a specific provision." *Id.* at 138. Thus, the failure to properly admonish a defendant does not automatically establish grounds for reversing the judgment or vacating the plea. *Id*. at 139; *People v. Davis*, 145 Ill. 2d 240, 250 (1991); *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). "Whether reversal is required depends on whether real justice has been denied or whether [the] defendant has been prejudiced by the inadequate admonishments." *Dougherty*, 394 Ill. App. 3d at 139; see also *Fuller*, 205 Ill. 2d at 323; *People v. Williams*, 2012 IL App (2d) 110559, ¶ 13. A defendant's assertion that a circuit court's admonishments failed to substantially comply with Illinois Supreme Court Rule 402(a)(2) (eff. July 1, 2012) is subject to *de novo* review. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14; *People v. Bailey*, 2021 IL App (1st) 190439, ¶ 27.

¶ 33　　　　　3. *Defendant's Extended-Term Eligibility and Admonishments*

¶ 34 Under Illinois law, conviction of a Class 3 felony (theft) can result in a two-to-five-year sentence. 720 ILCS 5/16-1(b)(4) (West 2020); 730 ILCS 5/5-4.5-40(a) (West 2020). If extended-term sentencing applies, imprisonment ranges from 5 to 10 years. *Id.* Extended-term sentencing is governed by section 5-5-3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(1) (West 2020)). This section provides, in pertinent part, that an extended term may be imposed when the "defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of *the same or similar class felony or greater class felony*, when such conviction has occurred within 10 years after the previous conviction." (Emphasis added.) *Id.*

¶ 35 Here, there are three prior convictions that would have to be examined to determine whether they would make defendant eligible for an extended-term sentence. Defendant acknowledged that one—a prior Illinois conviction for aggravated fleeing or attempting to elude a peace officer, a Class 4 felony (625 ILCS 5/11-204.1(a)(1), (b) (West 2010))—would suffice to make him extended-term eligible on count I for his possession of another's debit card, a Class 4 felony. His dispute, however, is with the impact on count II (theft) of the two convictions under Florida law, which utilizes a classification scheme different from that used in Illinois. Defendant contends that what Florida calls "Class 2" and "Class 3 felony" classifications are not equivalent to a Class 3 offense under Illinois law, and that therefore they do not create a basis for an extended-term sentence for his Class 3 theft conviction at issue here. To address this contention on the merits, it is necessary to correlate the Florida offenses with their equivalent under Illinois law.

¶ 36 The two Florida offenses of which defendant was convicted within 10 years of the convictions at issue here are (1) stalking, classified as a Class 3 felony under Florida law (FSA

§ 784.048(3) (West 2019)) and (2) written threat to kill or injure, classified as a Class 2 felony under Florida law (FSA § 836.10(2)(a) (West 2019)). Defendant asserts that the elements of the Florida crimes "actually fall under the Class 4 felony offense of non-aggravated stalking under Illinois law."

¶ 37 Although section 5-5-3.2(b)(1) does not define what constitutes the "same or similar class" of offense (*People v. Bailey*, 2015 IL App (3d) 130287, ¶ 12), circuit courts "should consider both the sentencing range and the elements of the offense in determining whether the defendant is eligible for an extended-term sentence under section 5-5-3.2(b)(1)." *Id.* ¶ 15. In *Bailey*, for example, the court remanded the case for a new sentencing hearing "to compare the sentencing ranges, as well as the elements of the offenses," to determine whether the out-of-state conviction was "a same or similar class felony" because the circuit court had only considered the elements of the offense and not the sentencing ranges. *Id*. ¶ 16.

¶ 38                                          4. *No Clear or Obvious Error*

¶ 39 In *Sargent*, the supreme court held that a court is to begin a plain-error analysis by "first determining whether error occurred at all." *Sargent*, 239 Ill. 2d at 189. Only where error is found does a court then proceed to consider whether either of the two prongs of the plain-error doctrine have been satisfied. *Id*. at 189-90 In *People v. Manskey*, 2016 IL App (4th) 140440, ¶ 82, this court held that to constitute such error, "the error has to just about leap off the pages of the record." We further explained: "Arguable error is not enough. Mere error is not enough. The error has to be 'clear or obvious.' [Citation.] Otherwise, it would not be *plain* error." (Emphasis in original.) *Id.* (citing *Walker*, 232 Ill. 2d at 124).

¶ 40 Here, the record offers no insight into how the prior Florida felony sentences were evaluated and compared under section 5-5-3.2(b)(1).

¶ 41    If there is an error here, it certainly is not one that "leap[s] off the page." See *id.* Rather, any potential misstatement can only be deciphered after a detailed comparison of the Florida Class 2 and 3 felony statutes and those of Illinois, and only then after a discretionary finding by the circuit court. In the end, the determination of whether the out-of-state convictions are deemed "a same or similar felony" constitutes a matter of circuit court discretion. *People v. Cavins*, 288 Ill. App. 3d 173, 184 (1997); *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). This is precisely the type of issue that *should* be addressed to the circuit court in the first instance. Raising in the circuit court the question of whether the Florida statutes have been properly correlated to Illinois law allows the circuit court the opportunity to explain its reasoning and us the opportunity to scrutinize it. As it is, we cannot find plain error on this record.

¶ 42    Finally, we note that defendant has also argued that the circuit court erred in referencing the potential for extended sentencing for both charges. In support, defendant cites *People v. Jordan*, 103 Ill. 2d 192, 206 (1984), which held, "when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class." We find no error here, as the circuit court was merely referencing the *potential* extended-term sentences for each count that could be imposed *had the defendant gone to trial and lost*. He did not impose an extended-term sentence, which is what *Jordan* references. *Jordan* is not implicated where, as here, the sentence is imposed pursuant to a fully negotiated agreement.

¶ 43    5. *Prejudice—The Circuit court's Sentence*

¶ 44    Additionally, even if we were to conclude that error occurred in the circuit court's admonishment, Illinois courts have held that a circuit court's failure to provide Rule 402(b) admonishments may constitute harmless error. *People v. Ellis*, 59 Ill. 2d 255, 257 (1974). "[A]n

imperfect admonishment is not reversible error unless *** the defendant has been prejudiced by the inadequate admonishment." *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005).

¶ 45        A misstatement of the minimum or maximum sentence necessitates a new sentencing hearing "only when it appears that the mistaken belief of the judge arguably influenced the sentencing decision." *People v. Eddington*, 77 Ill. 2d 41, 48 (1979). In considering whether a mistaken belief influenced the circuit court's sentencing decision, we " 'look to whether the [circuit] court's comments show the court relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence.' " *People v. Quinones*, 362 Ill. App. 3d 385, 398 (2005) (quoting *People v. Hill*, 294 Ill. App. 3d 962, 970 (1998)).

¶ 46        Applying *Eddington* to the facts of our case, we cannot conclude that a "mistaken belief of the judge" in any way influenced the sentencing decision. First, the court did not choose defendant's sentence, but rather accepted the terms of the parties' negotiated plea agreement, which included 24 months' probation and no new jail time. The court opened the October 25 hearing by stating to the parties, "It looks like a fully negotiated plea has been reached." Following a short discussion, the court then asked the assistant state's attorney to recite the negotiated plea agreement terms, which included the agreed probationary sentence and fine. The admonishment defendant complains of on appeal was not made until *after* the terms of the negotiated plea agreement were read into the record.

¶ 47        Furthermore, there is no basis to conclude that any action on the part of the circuit court was taken based on a misunderstanding of extended-term sentencing eligibility. The sentence imposed was not an extended-term sentence; it was, in fact, not a sentence of *any* incarceration beyond the 19 days already served. The law is well settled that a defendant is not prejudiced, and his guilty plea is not invalidated, when his sentence is within the range of penalties stated to him

at the time of his guilty plea, even if that range is found to be incorrect. *Cavins*, 288 Ill. App. 3d at 179.

¶ 48      For example, in *People v. Riegle*, 246 Ill. App. 3d 270, 275 (1993), the defendant was told at the time he entered his open guilty plea that he was subject to a range of 9 to 40 years' imprisonment, when it was really 6 to 30 years' imprisonment. Because the defendant was sentenced to 14 years' imprisonment—a term within either sentencing range—the court found no prejudice and upheld the conviction and sentence. *Id*. Similarly, in *People v. Felton*, 191 Ill. App. 3d 599, 602 (1989), the court found that because the defendant's sentence was far less than what he was told he could receive, the failure to admonish him as to the maximum sentence he could receive did not prejudice him, and as a result, his conviction and sentence were affirmed.

¶ 49      The instant case is distinguishable from cases such as *Hausman*, where the circuit court misstated the minimum sentence for aggravated battery as three years instead of two years, then sentenced the defendant to concurrent three-year prison terms. *Hausman*, 287 Ill. App. 3d at 1070-71. There, in reversing the circuit court's sentence and remanding for a new sentencing hearing, we concluded, "Whether it was an inadvertent misstatement or a mistaken belief, it arguably influenced the judge's sentencing decision." *Id*. at 1072. Here, on the other hand, even if the circuit court was incorrect in stating that defendant was eligible for an extended-term sentence, no such sentence was imposed.

¶ 50      Under these facts, we find there was no action taken by the circuit court based on a misapplication of the law which prejudiced the defendant in any way.

¶ 51                    6. *Prejudice—Defendant's Decision to Plead*

¶ 52      Another aspect of prejudice in this context is whether a misstatement concerning the maximum sentence might have induced defendant to plead guilty to avoid a higher sentence—

but one that he was actually ineligible to receive. However, we do not believe that there is prejudice shown here when defendant received exactly the sentence he bargained for *before* he heard from the circuit court about the possibility of an extended sentence. See *Dougherty*, 394 Ill. App. 3d at 138; but *cf. Whitfield*, 217 Ill. 2d at 186.

¶ 53        Defendant's reliance on *People v. Snyder*, 2011 IL 111382, in this context is misplaced. The defendant in *Snyder* was not advised that restitution might be part of her sentence, but the sentence ultimately imposed included a requirement of restitution. The supreme court stated that "if defendant in this case would not have pleaded guilty but for the incomplete admonishment, she should have sought leave to withdraw her guilty plea." *Id*. ¶ 32. Here, however, defendant got exactly the sentence for which he bargained.

¶ 54        Finally, we note that defendant made a clear record below of the *actual* reason he pleaded guilty: so that he could be home with his child for Halloween. While defendant does not on appeal argue this as a basis to withdraw his plea, it is nonetheless relevant to our conclusion that defendant was in no way prejudiced by anything the circuit court said concerning the possibility of an extended-term sentence. If we take defendant at his word, it becomes clear that his mind was made up on the plea agreement with the State for his own reasons, and well before he heard any discussion about potential extended-term eligibility. This is simply another reason to find an absence of prejudice here.

¶ 55        Accordingly, we conclude there is no reversible error regarding any purported misstatement in discussing the minimum and maximum sentencing regarding the theft conviction. For these reasons, the circuit court correctly denied the motion to vacate.

¶ 56                    B. Ineffective Assistance of Counsel

¶ 57    A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. The *Strickland* standard also applies to a claim that trial counsel was ineffective during the guilty-plea process. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687).

¶ 58    An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). Prejudice is established when a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20 (citing *Strickland*, 466 U.S. at 694). If a reviewing court can dispose of a defendant's claim of ineffective assistance on the ground that he failed to demonstrate sufficient prejudice, "then it may do so without determining whether counsel's performance was deficient." *Felton*, 191 Ill. App. 3d at 601; *People v. Albanese*, 104 Ill. 2d 504, 527 (1984). A defendant must satisfy both prongs of *Strickland*, and the failure to satisfy either precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010); *People v. Peel*, 2018 IL App (4th) 160100, ¶ 40.

¶ 59    Here, defendant has not established prejudice under the facts of this case. There is no showing of "a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). Our justifications for this conclusion are the

same points as discussed above: defendant's plea was fully negotiated before there was any discussion of a possible extended-term sentence. Additionally, defendant's testimony shows he was determined to do "whatever [he] had to do" to be out of jail for Halloween and that he would likely have accepted the plea agreement regardless of what was said by the circuit court or counsel.

¶ 60        The circuit court correctly denied the motion to vacate defendant's plea and sentence.

¶ 61                            III. CONCLUSION

¶ 62        For the reasons stated, we affirm the circuit court's judgment.

¶ 63        Affirmed.